Ruffin, C. J.
 

 The verdict throws out of the case William B. Wilson and Henry F. Wilson, and their acts and declarations ; and leaves the declaration against George Wilson alone, first, for “ destroying the credit of the plaintiff and thereby causing his insolvencyand, secondly, for
 
 “
 
 defrauding the plaintiff of a certain negro slave, a note and a judgment belonging to him.”
 

 As to the first, the plaintiff does not allege any means, by which any of the defendants injured his credit, as by the use of words importing his insolvency, or the like, so that the defendant had not the opportunity of insisting on the truth of the imputation as a justification, which the evidence shews they might certainly have done. If, therefore, the defendant George, had said upon the subject of the plaintiff’s circumstances, what it appears, his father did, he ought not to be responsible therefor in this action, because the complaint is not for an injury from the speaking of those words as a slander, but only a general charge of conspiring between them
 
 “
 
 to destroy the plaintiff’s credit,” which could only be answered by .the general issue and not justified. If there had been a count for the slander directly, the defence would have been unquestionable upon the truth of the imputation.
 

 Again, if we suppose proper allegations in the declaration relative to the sale of the plaintiff’s property under the execution of William B. Wilson, and the demanding of specie by him, as proved, we should hold that those acts constituted no legal injury. Every 1 creditor has a right to demand payment in money, and there is no money known to our law but metallic coin, domestic or foreign, as made current by.
 
 *508
 
 the laws of the United States; and, therefore, to demand suc^- payment cannot be a wrong in the eye of the law. But, in truth, the party made a liberal offer, to retract his demand o£ payment jn that manner, and further, to take a new security for his debt payable six months afterwards, if the plaintiff would give him competent sureties and indemnify him against cerlain responsibilities for the plaintiff. That the plaintiff declined or was unable to do, and the other party then insisted on the sale upon the terms stated, and, we suppose, it was made. But we see nothing which shews, that it was not a fair, and perhaps, the only means that person had, in the wreck of the plaintiff’s affairs, to save himself from loss by his engagements for the plaintiff. The effect was felt rather by the plaintiff’s other creditors than by himself, as he appears to have been unable to pay his debts under any circumstances ; unless, indeed, the property .conveyed by him to the defendant, George, be still regarded as legally his, or unless he has some action at law in respect thereof for damages. But, for those acts of his father, the defendant George is not responsible, as it does not appear that George participated in them; and if he had, it would have made no difference, inasmuch as the jury have found, under the instructions of the Court, the father himself did the plaintiff no injury thereby, and,
 
 a fortiori,
 
 the defendant George did not. Consequently, we must understand that the verdict against that defendant was not on this part of the case. If it was, it was clearly against law, and ought to have 'been set aside.
 

 Then, as to the other part of the case, it appears from the assignments and bill of sale which are inserted in the case, that on the 23d day of January, 1842, '.he plaintiff under his hand, “ in consideration of the sum of $350, to
 
 him
 
 in hand paid by George Wilson, (the receipt whereof he thereby acknowledged,) assigned to said George Wilson all his interest in an execution obtained in the name of Rachel M. Boswell against L. Q,. C. Butler, which is to the use of Caleb Setzar,” the plaintiff. It appears also, that one H. Keller and Olliers, on the 1st of June, 1840, gave their bond to L. Q,. C.'
 
 *509
 
 Butler, for $543 25, payable one day after date, which, without endorsement, came into the hands of the plaintiff, he endorsed it in these words, “pay to George Wilson, for value, February, 1842,” and delivered it to the defendant. And, lastlv, it appears, that on the 4th of February, 1842, the plaintiff executed to the defendant George, a bill of sale (which is attested by the witness John Sams,) for a negro boy named Hinson, fifteen years old, in consideration of $486, therein expressed to be then paid. In reference to those transactions, the instruction to the jury was, “that if the defendant George, by fraud and contrivance, managed to cheat the plaintiff of his property, they should find a verdict against him; and that, if that defendant purchased the negro boy, the note, and the judgment, fairly, and fora full price, or any thing like a full price, he could not be rendered responsible in this action; but if they believed that he had, by fraud and contrivance, got the negro, note, or judgment for nothing, then the action could be sustained against him.” The jury thereupon found for the plaintiff, and assessed the damages to $1000'; and from the judgment, the defendant George appealed to this Court.
 

 The Court is unable to perceive any principle whatever, on which the plaintiff was entitled to recover, according to the case proved, and still less according to that alleged in his declaration.
 

 It is to be remembered, that we are in a Court of Law, in which legal interests and legal conveyances alone can be taken notice of, and legal injuries redressed. Bearing this in mind, the question immediately presents itself, what property the plaintiff had in the things, of which he alleges that he was defrauded. If he had no property in them, he has lost nothing in a legal sense, and cannot have an action at law in respect to such as he had no property in. ño; if his property in them be the same it was, notwithstanding any supposed conveyance obtained from him by the defendant, he has no cause of action. Now, that is just the fact both with regard to the bond, given by Kellar to Butler, and the
 
 *510
 
 judgment recovered by Boswell against Butler, Neither of them belongs in law to the plaintiff. A judgment is not assignable; and the sum recovered therein was still a debt to goswej]) an(j was not transferred to the defendant by the plaintiff’s assignment. To give effect to the assignment, the defendant would be obliged to go into a Court of Equity, and there he would be repelled by his supposed* fraud, if established, and the money declared still to belong to the plaintiff. The same is likewise true as to the bond. For although a bond is assignable, yet this-had not been endorsed by the ob-ligee to the plaintiff; and therefore his assignment did not vest the right in the defendant, so as to enable him to recover in an action at law, against the obligor, and -he could only have done so in equity, upon a bill against the obligor, obli-gee, and the present plaintiff; in which there would be the same bar as against his claim to the judgment. If it be said, that the plaintiff’s assignment of the bond, if not effectual as an endorsement to transfer the bond, might yet be obligatory as a guaranty,on which he could be sued at law ; the answer is, that, if it was obtained without consideration and by imposition, not being by deed, it would not be obligatory even as a guaranty, and there could not be a recovery on it against the present plaintiff. In respect to those two items, then, the defendant may, for these reasons, be entitled to a verdict, and therefore, the judgment should be reversed, at all events, and the cause sent back for another trial, as to that part of the transaction, which concerns the slave. If, however, the bond and judgment had been the property in law of the plaintiff, and if his assignments had been effectual, as legal conveyances, to transfer the property
 
 to
 
 the defendant in the bond and judgment, as the bill of sale did in the slave, we should still hold, that the plaintiff has no cause of action, because he has sustained no legal injury. So, we think, it is with respect to the slave, and, by consequence, would be as to the bond and judgment.
 

 It is still to be borne in mind, that we are in a Court of Law, in considering the case as to the slave. Thus, if the
 
 *511
 
 conveyance for the negro was obtained from the plaintiff by duress, or when he was so drunk, that he did not know what he was about, or when he was
 
 non compos
 
 mentis, it would be invalid as a contract, and the negro would still belong to the plaintiff; and, consequently, he would have sustained no injury in point of law, from having been induced to give thé bill of sale, and that would be an answer to the action. But if, as we suppose, we must take that instrument to have conveyed the slave, and that thereby the plaintiff lost his title, then the plaintiff' has no cause of action at law, for' the fraud of the- defendant did not deprive him of his slave, but the plaintiff parted with him by his own act and deed. As long as that instrument remains in force and uncancelled, the plaintiff is precluded from alleging that he was cheated out of his slave by the defendant. The redress of the plaintiff, if he has any, is to have that instrument declared void and decreed to be delivered up and cancelled, or a re-conveyance decreed by the Court to which belongs such jurisdiction. It is not sufficient to allege in a declaration in general terms, that the defendant defrauded the plaintiff, but the fraud must be set forth, the means used, and the purpose effected. Here, it is said, the defendant defrauded the plaintiff of a negro, but by what method the Court is not informed. If we look to the evidence for information on the point, we would infer that the supposed fraud consisted' in thisthat the plaintiff, though having capacity to contract, was a weak, intemperate, and needy man, having great confidence in the defendant, an artful man, and in some degree of affluence, and that the defendant, taking advantage of the plaintiff’s necessities, and of the power he had over him, as his creditor, obliged him to sell and convey to him property at a grossly inadequate price, or that, under the pretence of a security for debts and advances, the defendant obtained an absolute conveyance, or that by undue influence of the defendant, as*a pretended friend of the plaintiff, he prevailed on him to execute a conveyance for the slave without any consideration whatever, or as upon a sale for the sum of $>486, which he
 
 *512
 
 did not pay nor secure, though
 
 in the conveyance he took
 
 . a)1 acquittance therefor, as if it had been paid. Such we understand must have been the views, or some of them, in which ijjg case wag sut,mitted to the jury; because his HONOR told them, if the defendant purchased fairly, and for any thing like a full price, to find for him; but if he got the negro (by fraud and contrivance,) for nothing, then to find for the plaintiff. We understand his Howor to mean by "nothing,” not, literally, no price or nominal sum at all, but a sum not any thing like a full price, though we do not think it material; for whether the plaintiff conveyed'for an adequate price or made a conveyance entirely voluntary, it would be valid at law, provided the party had capacity, which is not pretended to be denied in this case. Now, as no particular act of “fraud or contrivance” is designated in the instructions, other than the inadequacy or want of consideration, we must assume that the fraud was so constituted. And, so taking it, we hold the law to be otherwise, even if there were the other circumstances of undue advantage, influence, and imposition, before suggested, in bringing the plaintiff to agree to make the conveyance in question. Here the bill of sale, as an effectual legal conveyance, absolutely rebuts the allegation of fraud at law. Even if it were voluntary upon its face, it would do so, as such a conveyance is good. But upon its face it purports to be for $>486 and that sum paid; which concludes the vendor at law, that he did not convey for “ nothing.” Improper influence constitutes no legal objection to the validity of a deed.
 
 Clary v
 
 Clary, 2 Dev. 78. And a fraud in a treaty, which is consummated by a subsequent deed, cannot be alleged by way of impeaching the operation of the deed at law.
 
 Reid
 
 v Moore, 3 Dev. 310. Those are proper enquiries for a Court of E~ quity, which may set aside deeds,
 
 though
 
 executed by one having capacity, if obtained by improper means, or may hold them up merely as securities, if they were so intended or ought to have been. What other fraud could the defendant have committed on the plaintiff? A vendor is liable in
 
 *513
 
 an action of deceit for false representations, as to the title or qualities of a chattel sold by him. • But no action for a cheat has ever been maintained by a seller against a purchaser, for the misrepresentations of the latter upon those points. The law does not even give an action against the vendor, for his false affirmation as to the value of the thing sold.
 
 Saunders v
 
 Hatterman,
 
 2
 
 Ired. 32. Much less will an action lie against a purchaser for such an affirmation, or buying at an tinder value. In the nature of things, the owner of a chattel is supposed to be the best judge of its value, or to be most capable of ascertaining it.
 

 The plaintiff has mistaken his forum. He has shewn no legal injury, and therefore the judgment must be reversed, and the cause remanded for a
 
 venire de
 
 novo.
 

 The opinion already given, would render it unnecessary to determine the question of evidence. But as our opinion on it decidedly concurs with that of his Honob, we deem it proper to say so. The communication was made after the witness had refused the employment, and was, therefore, not confidential.
 

 Peu Cubiam.
 
 Venire de novo
 
 ordered.