# Jasper Trust Co. v. K. C., M. & B. R. R. Co,

## and

# Southern Express Co. v. Jasper Trust Co.

*Action to recover Damages for the False Issue of a Bill of Lading by a Railroad Company; and to recover Damages from an Express Company for Failing to deliver Money.*

1. *Bill of lading; right of bona fide purchaser.*—A *bona fide* purchaser of a false bill of lading from the person to whom it was issued by a railroad company's agent, may hold the company liable to the extent of advances made by him on such bill of lading, under section 1179 of the Code of 1886.

2. *Same; estoppel of carrier.*—As between a railroad company issuing a bill of lading, regular on its face. and one who shows himself to be the *bona fide* transferee or purchaser of the bill of lading, the corporation is estopped from denying that it received and holds the cotton specified in such receipt.

3. *False issue of bill of lading by agent of railroad Company; inquiry necessary by endorsee.*—When a railroad company's agent issues a bill of lading to a fictitious firm, for goods never received, and endorses it in the name of said firm, the endorsee is put upon inquiry concerning the endorsing firm ; and failing to inform himself as to whether there was such a firm, and not obtaining the endorsement from the firm to whom the bill of lading was issued, he can not recover damages from the railroad company under section 1179 of the Code of 1886.

[Jasper Trust Co. v. K. C., M. & B. R. R. Co.]

4. *Express company; embezzlement by agent.*—Where, through fraud or false pretenses of the agent of an express company, one is induced to deliver money to such express company to be carried and delivered by it to a fictitious firm, and the express company receives, gives its receipt for the money, carries it to the place of destination, and delivers it to such agent, who embezzles the money, the sender can recover the amount from the express company.

APPEALS from the Circuit Court of Walker.

Tried before the Hon. JAMES B. HEAD.

The causes of action in each of these two cases arose out of the same transaction, and being so intimately connected they were submitted and considered together.

In the first case, the Jasper Trust Co. sued the Kansas City, Memphis & Birmingham Railroad Company, to recover damages alleged to have been suffered by the plaintiff by reason of the alleged issue of a fraudulent bill of lading by an agent of the said railroad company; said bill of lading acknowledging the receipt of 30 bales of cotton, on the faith of which receipt and acknowledgment, expressed in the bill of lading, the plaintiff advanced the amount for which the action was brought, when, as a matter of fact, no cotton was received by the defendant. In this case there was judgment for the defendant, and plaintiff appeals. In the second case, the Jasper Trust Company sued the Southern Express Company for the failure to deliver a package of money to R. H. Sandford & Co. There was judgment in this case for the plaintiff, and defendant appeals. Both of the judgments are affirmed in this court.

The facts in each case are sufficiently stated in the opinion. In the case against the Kansas City, Memphis & Birmingham Railroad Company, the defendant, after the introduction of all the evidence, requested the court, in writing, to give the general affirmative charge in its behalf. The court gave this charge, and the plaintiff duly excepted.

In the case against the Southern Express Company the complaint contained two counts. The first seeks to recover for the failure of the defendant to deliver the certain moneys sued for, which were delivered to it as a common carrier to be delivered to R. H. Sandford & Co. The second count claims the same sum for money had and received.

Upon the introduction of all the testimony, the court, among other things, instructed the jury as follows: "If D. R. Sandford, being the agent of the railroad company, made out and signed the bill of lading in question for the purpose of defrauding or imposing on plaintiff, without having any cotton for shipment thereunder or expecting to have any, but that the bill of lading was spurious and fraudulent, and

27

if D. R. Sandford fraudulently procured plaintiff to ship the money to R. H. Sandford & Co., and if D. R. Sandford, as agent of defendant, received the money, it was his duty as agent of defendant to hold the money when it came into his hands as agent of the Express Company for the use of plaintiff, and if he failed to do so the defendant is liable in this action." The defendant excepted to this portion of the court's general charge, and also separately excepted to the court's refusal to give each of the following charges requested by it: (1.) "It was the duty of the Jasper Trust Company to ascertain with whom it dealt, and in shipping money to R. H. Sandford & Co., at their request, it was the duty of the Jasper Trust Co. to ascertain with whom it dealt, and who R. H. Sandford & Co. was, and if by failure to make such proper and necessary enquiries the money was delivered to a fictitious firm, then the plaintiff has no right to a verdict." (2.) "If the jury believe from the evidence that D. R. Sandford, or D. R. Sandford and his brother composed the firm of R. H. Sandford & Company, and if the jury further believe that the money was delivered to D. R. Sandford for R. H. Sandford & Co., then the Jasper Trust Co. is not entitled to a verdict." (3.) "The burden of proving that the money was not delivered to R. H. Sandford & Co. is on the plaintiff, and if the plaintiff, the Jasper Trust Company, has failed to prove that the money was not paid over or delivered to R. H. Sandford & Co., the verdict must be in favor of the Southern Express Co." (4.) "If D. R. Sandford, under the name of R. H. Sandford & Co., wrote the Jasper Trust Co. to send the money, and Jasper Trust Co. sent the money to R. H. Sandford & Co., and D. R. Sandford received the money from the Express Co., then the Express Co. is not liable." (5.) "If the jury believe the evidence they must find a verdict in favor of the defendant, the Express Company."

COLEMAN & SOWELL, for Jasper Trust Company, cited, *Bank of Batavia v. N. Y., L. E. & W. R. Co.*, 106 N. Y. 195; *Savings Bank v. A., T. & S. F. R. R. Co.*, 20 Kansas 519; *Sioux City & Pa. R. R. Co. v. First National Bank of Freemont*, 10 Nebraska, 556; *Brooke v. N. Y., L. E. & W. R. Co.*, 108 Penn St. 529; *St. Louis and Iron Mountain R. R. Co. v. Larned*, 103 Ill. 293; *Relyea v. New Haven R. M. Co.* 42 Conn. 579; *Michel v. Ware* 3 Nebraska, 229; *McCord v. W. U. T. Co.*, 1 L. R. A. 143.

J. J. ALTMAN, for Southern Express Co. 1. The general affirmative charge should have been given for the Southern

[Jasper Trust Co. v. K. C., M. & B. R. R. Co.]

Express Company., 61 Ala. 158; 14 Am. Rep. 576; 110 Mass. 26; *Edmunds v. Merchants' Despatch Transportation Company,* 135 Mass. 283; 135 Mass. 2/8; 4 N. E. Rep. 619; Benjamin on Sales (Bennett), § 436. 2. The court erred in its oral charge. If there was fraud on the part of D. R. Sandford, it was fraud committed while acting as agent of the railroad company. *Frenkel vs. Hudson,* 2 So. Rep. (Ala.) 758; 1 American Rep. 164; 10 New York, 68. 3. Plaintiff cannot treat the bill of lading as a nullity and look to defendant for any loss plaintiff may have sustained by it. Code of Ala., §§ 1175-1179; 106 New York 95; 65 New York 1,11; 135 Mass. 283; 8 So. Rep. 384.

WALLACE PRATT and HEWITT, WALKER & PORTER for Railroad Co.—1. At common law a common carrier is not liable for damages suffered by the assignee of a fraudulent bill of lading, who advances money on the faith of its receipt, issued by the agent of the carrier, without having received any goods as receipted therein, and in furtherance of the design to defraud. *Cox v. Keahey,* 36 Ala. 340; *Railroad Co. v. Webb,* 49 Ala. 240; *Water Works Co. v. Hubbard,* 85 Ala. 179; *Grant v. Norway,* 2 Eng. L. & E. Rep. 337; *Coleman v. Richards,* 16 C. B. 104; *Hubbersty v. Ward,* 8 Exch. 330; *Brown v. Coal Co.,* L. R. 10 C. P. 562; *McLean v. Fleming,* L. R. 2. H. L. 128; *Cox v. Bruce* 18 Q. B. D. 147; *Meyer v. Dresser,* 16 C. B. 646; *Jessel v. Bath,* L. R. 2 Exch. 267; *Hickox v. Buckingham,* 18 Howard, 182; *Lady Franklin,* 8 Wallace 325; *Pollard v. Vinton,* 105 U. S. 7; *Railway Co. v. Knight,* 122 U. S. 79; *Robinson v. M. & C. R. R. Company,* 9 Fed. Rep. 129; *Sears v. Wingate,* 85 Mass. 103; *Railway Co. v. Wilkin,* 44 Md. 11; *Fellows v. The Powell,* 16 La. Ann. 316; *Bank v. Laveille,* 52 Mo. 380; *Williams v. Railway Co.,* 93 N. C. 42; *Dean v. King* 22 Ohio State 118; *Bank of Commerce v. C. B. & N. R. R. Co.,* 46 N. W. Rep. 346. 2. The Jasper Trust Company was put on inquiry, both as to the extent of the defrauding agent's authority, and as to the existence of the facts essential to its exercise. *Farrington v. South Boston Railway Co.,* 150 Mass. 406; *Smith v. Los Angeles Ass'n.,* 20 Pac. 677; *Claflin v. Farmers' Bank,* 25 N. Y. 293; *Shaw v. Railroad Co.* 101 U. S. 557; *King v. Sparks,* 77 Ga. 285; *Tyree v. Lyon,* 67 Ala. 1; *N. Y. Iron Mine v. First National Bank,* 39 Mich. 644. 3. The statute, Code of 1886, section 1179, does not have the effect of imposing on the carrier absolute liability on a bill of lading in the hands of an assignee, appearing to be regular on its face and bearing the signature of the

agent, regardless of the circumstances attending its issue and attending the taking of it by the assignee. *Zeigler v. S. & N. R. R. Co.* 58 Ala. 599 ; *Stoudenmire v. Brown*, 48 Ala. 699 ; *Davis v. Minge*, 56 Ala. 121 ; *Oliver v. Robinson*, 58 Ala. 46; *Shaw v. Railroad Co.*, 101 U. S. *supra; Bank v. C. B. & N. R. R. Co.*, 46 N. W. Rep. 560 ; *Jacob Dold Packing Co. v. Ober & Sons*, 71 Md. 155.   4. Bills of lading are not negotiable in this State:   *Moore v. Robinson* 62 Ala. 537; *Leigh v. M. & O. R. R. Co.*, 58 Ala. 165.

STONE, C. J.—These two cases are so intimately connected with each other that we will consider them together.

The Jasper Trust Company, located at Jasper, was engaged in banking.   On the Kansas City, Memphis & Birmingham Railroad, distant from Jasper some sixty miles, is a railroad station known by the name of Sulligent, and the Southern Express Company has an office there.   D. R. Sandford was depot agent of the railroad at that place, and was also agent of the express company; he filling both offices at that station.   On September 9, 1890, D. R. Sandford, as agent of the railroad company, signed a bill of lading, using one of the railroad's blanks, by which he acknowledged to have received from R. H. Sandford & Co. thirty bales of cotton weighing 15,000 pounds, in apparent good order, to be delivered to Barry, Thayer & Co. at Boston, Massachusetts. On the back of this bill of lading is this indorsement without date: "Deliver to Jasper Trust Co., R. H. Sandford & Co."   The original bill of lading has been sent up under the trial court's order for our inspection.   We find a very striking resemblance and similarity in the two signatures—D. R. Sandford to the bill of lading, and R. H. Sandford & Co. to the indorsement.

Soon after the issue of this receipt, a draft was drawn on Barry, Thayer & Co., Boston, Mass., bearing the signature of R. H. Sandford & Co., for a sum approximating the value of thirty bales of cotton, in favor of the Jasper Trust Company; and this draft, with the bill of lading attached and indorsed to it, as copied above, were forwarded to the Trust Company, and by it discounted.   That company thereupon attempted to remit the proceeds of the draft, something over eleven hundred dollars, to R. H. Sandford & Co. at Sulligent; and to that end delivered the money to the Southern Express Company, taking its receipt and obligation to pay and deliver the same to R. H. Sandford & Co. Soon afterwards D. R. Sandford, the agent alike of the rail-

[Jasper Trust Co. v. K. C., M. & B. R. R. Co.]

road and the express company, absconded, carrying with him said sum of money, together with other moneys obtained by similar practices.

The bill of lading, acknowledging the receipt of the thirty bales of cotton to be shipped, was false and fraudulent, no cotton in fact having been received. Nor was there such a firm as R. H. Sandford & Co. The entire transaction was planned and carried into effect by D. R. Sandford, the agent. He issued the false bill of lading; issued it to R. H. Sandford & Co., when there was no such firm or business house. He indorsed the pretended name of this fictitious firm on the bill of lading, to give it negotiability, and to enable him to consummate his fraudulent scheme. The money, consigned to this fictitious firm, in due course of business came to him as the express company's agent at Sulligent, and he did not deliver it to R. H. Sandford & Co. He could not, for they were a fiction.

The Jasper Trust Company instituted these two suits; the one against the railroad company for the non-delivery of the thirty bales of cotton. This suit under the trial court's ruling terminated in favor of the defendant. The facts were all agreed on, and at the written request of the defendant, the railroad company, the court charged the jury that if they believed the evidence they should find for the defendant. They so found.

There can be no question that before February 28, 1881, the Trust Company was without right to maintain this action. Advancing money on a false bill of lading given by the railroad's agent would have placed them upon no higher ground than the person to whom it was improperly issued would have occupied. It was in no sense a negotiable instrument.—*Moore v. Robinson*, 62 Ala. 537.

On February 28, 1881—Sess. Acts, 133—the act was approved "To prevent the issue of false receipts," &c. The principles of that statute have been carried into the Code of 1886, commencing with section 1175. We quote from section 1179: "If any common carrier, not having received things or property for carriage, shall give or issue a bill of lading, or receipt, as if such things or property had been received, . . . such carrier . . or person is liable to any person injured thereby for all damages, immediate or consequential, therefrom resulting."

An argument, prepared with great labor and research, has been submitted by the appellee. Its contention is that while D. R. Sandford was the accredited depot agent to execute bills of lading for freight to be transported on the railroad,

he had no authority to execute such bills, unless the thing or merchandise to be transported was in fact received. That, as the cotton specified in the bill of lading was not received, Sandford transcended his delegated authority when he gave the receipt, and fastened no liability on the railroad company. This ingenious argument is followed by many citations of authority.

In the absence of our statute, the foregoing argument would be conclusive. The bill of lading not being, in any sense, a negotiable instrument, the indorsee could assert no greater rights than the indorser could have asserted.—2 Amer. & Eng. Encyc. of Law, 241, and notes. The argument claims that our statute has wrought no change in this rule.

It seems to us that a full answer to this contention is found in the fact that such interpretation would practically annul that part of the statute which we have copied. Corporations are artificial entities or things, and can act only through human agency. Deny to them this agency, and they are left without power to do any act, or to achieve any result. The depot agent, in executing a bill of lading, is the railroad company speaking through him. His delegated power is restricted, it is true, for he is authorized to receipt for freight, only when the freight is actually delivered to the railroad. But agents are sometimes false to their trusts, and injury to innocent outsiders is the consequence. It was this which rendered the statute under consideration necessary, and caused its enactment. The legislature realized that carriers or their agents might be negligently or intentionally derelict, and that damage, immediate or consequential, might result therefrom. To visit the loss thus occasioned on the carrier, was simply placing the penalty where personal fault, or that of an agent, had caused the injury to be inflicted. Not to give the statute this interpretation, is to deny to it all operation, when a corporation is the carrier. Its whole intention was to punish and prevent the giving of a bill of lading, when the property or thing was not in fact received for transportation; and if we limit the carrier's liability to cases in which the property or thing receipted for is actually received, do we not leave the statute without any purpose to be accomplished? Its language is, "Not having received things or property for carriage, shall give or issue a bill of lading or receipt, as if such things or property had been received." This makes the statute precisely applicable to the case we have in hand; and not to give it such construction would be to deny it all operation as against corporations.

Our statute was preceded by statutes on the same subject alike in England and in many of the States of this Union. See them referred to in 2 Amer. & Eng. Encyc. of Law, 241-2, and notes. It was enacted to prevent frauds, sometimes perpetrated through spurious bills of lading. It was not intended to make them negotiable instruments, like bills of exchange. Though transferrible "by indorsement and delivery, it does not follow that all the consequences incident to the indorsement of bills and notes before maturity ensue, or are intended to result from such negotiation." The statute must not "be construed as altering the common law, or as making any innovation therein, further than the words import."—*Shaw v. Railroad Co.*, 101 U. S. 557.

A bill of lading, regular on its face and issued by a carrier, or its authorized agent, is a certificate that the person to whom it is issued is the shipper of the property or the goods therein described, that they really exist, and are subject to the order and direction of the shipper unless the bill of lading furnishes notice that such is not the fact. And our statute is authority for any one to deal with the person to whom such bill of lading is issued, on the basis and postulate that the property or goods in fact exist, are in the possession of the carrier, and subject to the conditions expressed in the bill of lading. Any one to whom such bill of lading is indorsed and transferred by the person to whom it was issued, and who parts with value and becomes the innocent holder of it without notice, may hold the carrier responsible for the truth of its recitals, and for damages to the extent he may have advanced on the faith of its genuineness and truth as a bill of lading. Code of 1886, § 1179, last clause. As between the railroad company and any one who shows himself a *bona fide* transferee and purchaser of the bill of lading, the corporation is estopped from denying that it received and holds the cotton specified in the receipt.

Still, as we have said, such indorsed bill of lading is not raised to the elevated plane of bills of exchange and other negotiable instruments. A bill of exchange payable to a fictitious person, may under some circumstances, be negotiable, and the holder, if without notice and for value, may be protected against defenses, original or intermediate. 1 Daniel Neg. Instruments, §§ 136 *et seq*. This principle, however, can not, and does not apply to bills of lading. They are not transferable by delivery, and possession of them by any person, of whose ownership the writing furnishes no proof, raises no presumption of change of property in the

thing receipted for. The statute makes no express provision for their indorsement or transfer, but it is alike natural and reasonable that any one who claims to have succeeded to the ownership of the chattels or things expressed in the writing, must furnish the proof of such changed ownership. Indorsement will accomplish this. Who can indorse? Only the person to whom the bill of lading is given—the person the paper declares to be the owner and shipper, or his authorized agent. The power exists in no one else; and if any outsider, having no authority therefor, attempt to indorse, or otherwise transfer it, no title or right to the property or things therein expressed is thereby transferred or incumbered. It is unlike a bill of exchange or negotiable note, which is perverted to a use other than that to which, by the terms of the agency, it was alone authorized to be applied.—*Saltmarsh* v. *Tuthill*, 13 Ala. 390.

The question then comes up, who can transfer a bill of lading, or incumber it, so as to vest a title or right in the transferee? Manifestly this can be done only by the person to whom it is issued, or with his authority. If a stranger obtains unauthorized possession of it, and perverts it to unauthorized uses, no one who trusts such stranger and parts with value on the strength thereof, can claim damages of the carrier for the injuries he may thereby have suffered. It would be his own fault and folly if he dealt with one having no authority in the premises. He should have inquired.

The bill of lading in the present case was issued to a fictitious firm. There was no such company as R. H. Sandford & Co. That name indorsed on the bill of lading imported nothing, represented nothing. The Jasper Trust Company acquired no rights from R. H. Sandford & Co., for being only an imaginary firm, it could neither have nor transfer rights. The bill of lading being drawn in favor of a person or firm having no real existence, how could it confer any rights on another? Manifestly, having no existence, it neither did nor could confer rights; neither did nor could indorse the bill of lading. And the Jasper Trust Company, acquiring no rights save those conferred on it by the indorsement, was necessarily put on inquiry as to who were R. H. Sandford & Co. That inquiry would have led to the discovery that there was in fact no such firm, but that it was a fiction and a myth. The railroad company has done the Jasper Trust Company no legal wrong, of which the latter company can complain. Its failure to inform itself whether there was such firm as R. H. Sandford & Co.—its failure to obtain an in-

dorsement of the bill of lading from the person or firm to which it was issued—is a bar to any claim of damages it may assert against the railroad company.

The second suit was against the express company, to recover the money intrusted to it. We have seen that the Trust Company, or bank, was made the victim of fraud and false pretense. No thirty bales of cotton were in fact delivered to the railroad company, and there was no such firm or company as R. H. Sandford & Co. If there had been such company, and the express company had delivered the package of money to it before notice given not to pay, then the express company would have performed its whole contract, and the Trust Company would be without remedy. Such is not this case.— *Yarbrough* v. *Wise*, 5 Ala. 292; *Wilson* v. *Sergeant*, 12 Ala. 778.

In the first of these cases—that of the Kansas City, Memphis & Birmingham R. R. Co.—the facts were agreed on, and it was admitted there was no such firm as R. H. Sandford & Co. There was no agreement in the case against the express company as to what the facts were. It was tried on testimony adduced. We have examined the transcript with care, and have narrowly scrutinized the testimony, all of which is set out in the bill of exceptions. The proof is full that D. R. Sandford, the agent, did all the writing and corresponding which purports to have been done in the name of R. H. Sandford & Co. The proof is quite full that there was no such firm as R. H. Sandford & Co., while there was not a semblance of proof that there was, or ever had been such company. We make this statement, because it constitutes an important factor in pronouncing on one or more of the charges requested.

According to the testimony, if believed, the simple and naked facts of this case may be summarized as follows: Through the fraud and false pretense of D. R. Sandford, the Jasper Trust Company was induced to deliver its money to the Southern Express Company to be carried and delivered to R. H. Sandford & Co., at Sulligent. The express company received and receipted for the package, carried it to Sulligent, where it was received by the express company's agent, and by him converted and embezzled. The express company has never performed the contract it entered into, by paying the money to R. H. Sandford & Co., or to any one else authorized to receive it. The present suit is brought to recover that money, as still constructively in the possession of the express company.

It is elementary law that if one, through mistake of fact,

false representation, or fraud, obtain money from another, an action lies to recover it back, on the simple principle that the one has money which *ex æquo et bono* belongs to another.—2 Dan. Neg. Instr's., §§ 136, *et seq.;* Bishop Contr., § 226; 1 Pars. Contr., bottom p. 496; 3 Randolph Com. Paper, §1485; *Rutherford* v. *McIver,* 21 Ala. 750; 1 Brick. Dig., 140, § 72; *Wilson* v. *Sergeant, supra.* So, if money be transmitted through fraudulent procuration, and while the money is in transit the fraud is discovered and the bearer or carrier is notified not to deliver, then such bearer or carrier becomes the custodian of the money for the use and benefit of him who remitted it and is liable to account to him therefor. But after delivery, demand and notice come too late. The rule in such case is, to this extent, analogous to that which obtains in stoppages *in transitu.*—2 Amer. & Eng. Encyc. of Law, 855; Bishop Contr., § 802.

That part of the court's general charge, to which exception was reserved, is in precise accordance with our views, and is free from error. For the same reason the first charge asked was rightly refused. The second charge asked was abstract, in that there was no testimony to support it. No testimony offered tended to show that D. R. Sandford was a member of the firm of R. H. Sandford & Co., or in fact that there was such firm. It was proved to be fictitious. This charge was rightly refused for this reason. 3 Brick. Dig., 113, § 106. There is nothing in the other charges.

On the case made by the testimony, giving full weight to every thing claimed by defendant as in its favor, the trial court would have been justified in giving the general charge in favor of the plaintiff. Such being the case, we will not inquire specially into the court's rulings in receiving testimony offered by plaintiff. Whether some portion of it was material or not, it neither strengthened plaintiff's case, in any material point, as shown by the unchallenged testimony, nor could it weaken the defense attempted to be made. In such conditions, it is not a reversible error to receive illegal testimony. *Seymour* v. *Farquhar,* 93 Ala. 292, and authorities cited.

It is not intended, in what we have stated, to affirm that illegal testimony was received in this case. The fundamental fact on which plaintiff's right of recovery depended was D. R. Sandford's machinations, through which he deceived the Jasper Trust Company, and induced it to remit its money to the mythical R. H. Sandford & Co. Every step taken in that chain-work was part and parcel of the fraud he so successfully designed and perpetrated. It can not be ques-

[McCall v. American Freehold Land Mortgage Co.]

tioned that every act done which contributed to the consummation of the particular wrong complained of in this case was material and pertinent testimony to go before the jury.

There is no error in either of the records, and each of the judgments must be affirmed.

COLEMAN J., not sitting.

McCLELLAN J., dissenting.