# Thompson *v.* Alabama Midland Railway Co.

### *Action against a Common Carrier.*

1. *Action against common carrier; when issuing bill of lading before the receipt of goods does not make carrier responsible.* Where shippers represent to an intermediate carrier to whom a consignment is about to be delivered from the initial carrier, that they had sold the goods to an out of town purchaser, who wished to obtain a bill of lading before leaving for his home, and to accommodate such purchaser and the shippers, and expecting soon to obtain possession of the goods. the intermediate carrier issues a bill of lading for them, such bill of lading is not fraudulent within the meaning of the statute, (Code of 1896, § 4223), making a common carrier liable for all damages resulting from the issuance by it of a bill of lading for goods not in its possession.

2. *Same; reasonable diligence in delivery of shipment exempts carrier from liability.*—Where a common carrier uses due and reasonable diligence in the transportation and delivery to a consignee of goods shipped over its line, it is not liable to the consignee for expenses incurred by him in going to the station to receive the shipment before its arrival.

APPEAL from the Circuit Court of Montgomery .
Tried before the Hon. JOHN R. TYSON.

This action was brought by the appellant, J. A. Thompson, against the Alabama Midland Railway Company, and was originally commenced in a justice of the peace court, in June, 1897. Upon judgment being rendered in the justice's court in favor of the plaintiff, the cause was carried to the Circuit Court by appeal.

The complaint contained two counts. In the first count the plaintiff claimed fifty dollars damages, and alleged that the defendant was a common carrier engaged in the carriage of freight and passengers between Montgomery and Ramer; that on the 26th February, 1897, it issued a receipt or bill of ladin gfo ra car of ear

[Thompson v. Alabama Midland Railway Co.]

corn and delivered the same to Jones & Ray, merchants in the city of Montgomery, Alabama, and at the time, of the issuance of said receipt or bill of lading, defendant did not have the corn in its possession, and that the same was not delivered to it until the 28th February; that on the 26th February, plaintiff negotiated with Jones & Ray for the sale of the corn, and they delivered the bill of lading to him. He further alleges that the bill of lading purported to show that the goods were held by the defendant ready for shipment to Ramer, and that defendant ran daily trains to Ramer from Montgomery, and plaintiff knew that fact; that for, towit, five days after the time of the sale the defendant failed to forward the goods to Ramer, and plaintiff not knowing that the same were not in defendant's possession at the time of the issuance of the bill of lading, or had not been forwarded to Ramer, went to the expense of sending a large number of wagons and drivers to the depot at Ramer, to haul away the goods on the 1st day of March.

The second count of the complaint is substantially the same, except that it is further alleged that the bill of lading came into plaintiff's possession in the due course of business after he had negotiated with the holders for the purchase of the goods, and that when he sent his wagons and teams to the depot at Ramer he was acting upon the belief that the goods had been in the possession of the defendant at the time of the issuance of the bill of lading, and that they had been forwarded to Ramer.

In the circuit court, the case was tried by the court on an agreed statement of facts, without the intervention of a jury. In the agreed statement of facts it appeared that the defendant ran a daily freight train from Montgomery to Ramer; that on Friday, February 26th, a bill of lading was issued by the defendant to Jones & Ray, consigning the car of corn to the plaintiff at Ramer; that at the time of the issuance of the same the car was not in the possession of the defendant, but in the possession of the L. & N. Railroad Company; that Jones & Ray had paid the freight to the latter company, and when the bill of lading was issued, gave an order on that company to deliver the car to the defendant; that the car

[Thompson v. Alabama Midland Railway Co.]

did not come into defendant's possession until 4:20 P. M. of February 28th; that Jones & Ray induced defendant, as a favor to them, to issue the bill of lading, and assigned as their reason for asking it, that the plaintiff having purchased the corn desired a bill of lading therefor before he left the city for his home in the afternoon of that day, and that they wished the bill of lading to gratify him. It further appeared that the delay in the delivery of the car by the L. & N. Railroad Company to the defendant was due to a wreck or rush of business in the yards of the former company in the city of Montgomery. It further appeared that during the days of the week preceding the 26th February, the plaintiff was in the city of Montgomery serving on the grand jury, and on that day purchased the car of corn from Jones & Ray, and received the bill of lading; that he resided at Pine Level, twelve miles southeast of Ramer, and on the afternoon of that day went to his home, and that on Monday morning, March 1st, supposing that the car had reached Ramer, he hired a number of wagons and teams and sent them from Pine Level to Ramer to haul the corn to his home; that the corn had not arrived, and he suffered a damage of $29.50, growing out of the hiring and use of said teams; that at the time of the purchase, plaintiff gave Jones & Ray a check with which to pay for the corn, with the understanding that they were not to present the same until Monday; that on Monday plaintiff returned to the city to serve on the grand jury another week, and when he got to Ramer he ascertained that the corn had not arrived. He came directly to Montgomery and served notice on the drawees not to pay the check, and that he then rescinded his trade with Jones & Ray. When the plaintiff ascertained that the car had not arrived at Ramer that morning, it was too late to notify his wagons and teams not to go on to Ramer that day. The car of corn arrived there sometime during that night and was ready for delivery the next morning, but plaintiff refused to take it.

The court rendered judgment for the defendant, to the rendition of which jugment the plaintiff duly excepted. The plaintiff appeals and assigns as error the rendition of judgment for the defendant.

[Thompson v. Alabama Midland Railway Co.]

FRANCIS G. CAFFEY, for appellant.—An examination of
the original statute shows that a common carrier is pro-
hibited from giving a bill of lading unless the goods have
been "actually received." When we bear in mind the
purpose for which the statute was enacted, it is clear
that it would be ineffectual unless this was the provision.
*Aetna Nat. Bank v. Water Power Co.*, 58 Mo. App.
532. It may be conceded that the defendant did act in
the utmost good faith, but it did not comply with the
statute, and the statute declares that any one violating
it "shall be deemed guilty of fraud" and fixes a penalty
for failure to comply with it. This is similar to the con-
tention that was made in the case of *Walker v. English,*
106 Ala. 369; where it was held in a suit to recover the
statutory penalty for failure to satisfy a mortgage, that
non-compliance with the statute was the sole requisite
for the existence of the cause of action. The main con-
tention for the defendant, however, as to the construc-
tion of the statute is that it was only intended to create
an estoppel against the carrier to deny receipt of the
goods, and that, therefore, the fact that the carrier did
not have the goods in possession at the time of the issu-
ance of the bill of lading could be material only in a
suit arising for recovery of the goods themselves or upon
the bill of lading. Without this statute, that is, at com-
mon law, there was a divergence of opinion among
the courts of last resort upon the question of the liability
of the carrier whose agent issued a bill of lading without
receipt of the goods. In some jurisdictions it was held
that the carrier, having put it in the power of its agent
to issue a false bill of lading, must be liable to any person
injured thereby. It was generally held, however, and was
so ruled in England, by the Supreme Court of the United
States, and by many of the best courts in this country
that such an act of an agent was beyond the scope of his
authority, and, therefore, not binding on the principal.—
*Jasper Trust Co. v. K. C. M. & B. R. R. Co.*, 99 Ala. 416;
*Grant v. Norway*, 10 C. B. 665; *Pollard v. Vinton*, 105
U. S. 7; *Nat. Bank v. Chicago &c R. R. Co.*, 44 Minn.
224; 4 Amer. & Eng. Encyc. of Law, (2d ed.), 532-3,

[Thompson v. Alabama Midland Railway Co.]

A. A. WILEY, *contra.*—This suit can not be maintained under the statute it is sought to be brought under.—Code of 1896, § 4223. This statute was enacted for the purpose of making a railroad company liable on a bill of lading for freight which was never delivered to the railway company. The purpose of these provisions was to prevent the issue of false receipts.—*Jasper Trust Co. v. K. C., M. & B. R. R. Co.*, 99 Ala. 416; *Southern Ex. Co. v. Bank of Tupelo*, 108 Ala. 517.

HARALSON, J.—This suit is sought to be maintained under sections 4218 and 4223 of the Code of 1896. Section 4218 (1174) (2139) (1883) provides, that "Warehousemen or common carriers receiving things or property of any kind for safe keeping or carriage, for hire or reward, must, on the delivery to them of such things or property, give the person from whom received a receipt or bill of lading stating the order or condition in which such things or property may be, * * * and the warehouseman or carrier, neglecting or failing to give such receipt or bill of lading is liable for all loss or damages the owner of such things or property may sustain in consequence of such neglect or failure" etc.

Section 4223 (1179) provides, as to common carriers, "If any common carrier, not having received things or property for carriage, shall give or issue a bill of lading, or receipt, as if such things or property had been received, * * such carrier * * * is liable to any person injured thereby for all damages, immediate or consequential, therefrom resulting."

The original statute from which these sections have been carried into the Codes, was approved February 28th, 1881, (Acts, 1880-81, p. 133), and was entitled an act, "To prevent the issue of false receipts and to punish the fraudulent transfer of property by warehousemen, wharfingers and others."

In *Jasper Trust Co. v. K. C., M. & B. R. R. Co.*, 99 Ala. 416, said section 4223 (1179) was construed, and it was there stated, that "It was enacted to prevent frauds, sometimes perpetrated through spurious bills of lading," to the injury of innocent outsiders in consequence,

especially to *bona fide* purchasers for value without notice.

The carrier in cases of the kind, takes the risk of a delivery to the person entitled to the goods by the bill of lading, as though the property were in its actual possession, and is estopped to deny its possession. The general rule of law is, that the consignee named in the bill of lading is presumptively the owner of the goods, and must be treated by the carrier as the absolute owner until he has notice to the contrary, and a delivery to him without such notice will discharge the carrier. If a party not the consignee claims the goods, he should be required to produce the bill of lading with the indorsement of the consignee where the goods are deliverable to him or his assigns, or, of the shipper himself, when the goods are shipped on his account and are deliverable to his order.—Hutchinson on Carriers, § 130.

This case, on the agreed statement of facts, does not fall within the provisions of said section 4223 (1179) of the Code, enacted to prevent the issue of spurious bills of lading. The bill issued in this case was not spurious or in anywise fraudulent. It was issued, as the agreed statement of facts states, "at the instance of Messrs. Jones & Ray (the shippers, who had sold the corn to plaintiff) to oblige them, and for the reason assigned by them, that the plaintiff, Thompson (the consignee), having purchased the car load of corn from them, desired to obtain a bill of lading therefor, before he left the city of Montgomery for his home in the afternoon of the said 26th of February, 1897, and that to gratify him, the said Jones & Ray asked that the said bill of lading be issued." The corn was not in the possession of the appellee company at the time, and it is manifest, that that company was consenting to issue said bill of lading, with the expectation of soon acquiring possession of the same from the L. & N. Company, and was doing what it did for the accommodation of Jones & Ray and the convenience of the appellant, as it had been made to appear by what Jones & Ray had told it. Under these circumstances, the transaction does not come, as we have said, within the influence of that section of the

[McClendon *et al.* v. Equitable Mortgage Co.]

Code, but falls within the general rules of law for the delivery of goods by a carrier to a consignee. Again, it is shown, without conflict, that the appellee company,—that provision of the Code being out of the way,—performed due and reasonable diligence in the delivery of the corn to appellant, at the proper time and place, and appellant refused to receive it. It was appellant's fault if he sent his wagons for the corn, before its arrival. The delivery was prevented by the act of the party complaining, without the fault of the carrier, and the carrier is not therefore liable.—*L. & N. R. R. Co. v. McGuire*, 79 Ala. 395; *L. & N. R. R. Co. v. Oden*, 80 Ala. 38, 43.

On the undisputed facts, the general charge might have been given for the defendant, and the judgment must, therefore, be affirmed.—*Seymour & Co. v. Farquhar*, 93 Ala. 292; *Adler v. Prestwood & Knowles, ante*, p. 367.

Affirmed.