# Alabama Great Southern Ry. Co. *v.* Commonwealth Cotton Manufacturing Co.

*Action on Bill of Lading for Difference in Weight of Cotton Shipped Thereunder.*

(Decided Dec. 5th, 1906. 42 So. Rep. 406.)

*Carriers; Bills of Lading; False Statements; Liability of Carrier.*— The compress company delivered to the common carrier a shipment of cotton in a sealed car, with certificate of the con-

[Alabama Great Southern Ry. Co. v. Commonwealth Cotton Manufacturing Co.]

tents of the car. The carrier's agent issued, on the certificate, a bill of lading for fifty bales of cotton of a specified weight. The bill of lading contained the words "contents and condition of contents of packages unknown." The car contained fifty bales of cotton, but of considerably less weight than stated in the bill, and the consignee, who purchased from the consignor, was deceived to his injury. Held, the carrier was not liable to consignee, either under the general principles of the common law, nor under section 4223, Code of 1896.

APPEAL from Birmingham City Court.
Heard before Hon. C. W. FERGUSON.
The following were the agreed facts:
"On the 30th day of October, 1902, the Commonwealth Cotton Manufacturing Company purchased from Smith & Coughlin, cotton brokers, doing business in Birmingham, Alabama, fifty (50) bales of cotton at 8 9-16 cents per pound, sight draft, terms, bill of lading attached, landed at Durham, North Carolina.

"On the 9th day of April, 1903, the agent of the Alabama Great Southern Railroad Company, who had authority to issue bills of lading, issued a bill of lading at Birmingham, Alabama, for fifty bales of cotton marked A. H. J., alleging in the bill of lading the weight of the cotton to be 25,637 pounds, weights subject to correction, said cotton to be delivered to the Commonwealth Cotton Manufacturing Company, at Durham, North Carolina. Said bill of lading was issued to the said Smith & Coughlan, giving the weight subject to correction, as hereinabove stated; and in said bill of lading it was stated that the contents and condition of the contents of the package were unknown to the defendant. Said bill of lading may be introduced in evidence without further proof, the same being now attached to this agreed statement of facts.

"That on the 9th day of April, 1903, the said Smith & Coughlan drew a draft on the plaintiff with the said bill of lading attached for the sum of $2,195.16, as collection for the price of said cotton of the weight named in the bill of lading, which said draft was paid by the plaintiff on the 11th day of April, 1903. That said

Smith & Coughlan, on the date of the payment of said draft were insolvent, and have continued to be insolvent since that date, and are now insolvent; that attached to said draft was an invoice giving the weight of each bale of cotton of said lot of fifty bales, which weight aggregated 25,637 pounds. That said invoice and draft are likewise attached and made a part of this agreed statement of facts.

"That on the first day of May, 1903, there was delivered by the defendant to the plaintiff, through its connecting line fifty packages or half bales of cotton marked A. H. J., out of car C. & N. W. 61,222; and the said fifty bales or packages of cotton delivered to the plaintiff aggregated the weight of 14,305 pounds; the weight of each bale of cotton delivered to the plaintiff is given on the reverse side of the invoice hereto attached, and the total weight was, as stated, 14,305 pounds, there being a shortage in weight of 11,332 pounds from the figures given in the bill of lading.

"On the date this cotton was delivered in Durham, N. C., cotton of this grade was worth 11 1-4 cents per pound, and the cotton so delivered was worth less than the fifty bales of cotton would have been worth if they had been full bales by $1,274.85.

"The agent of the defendant railroad company who issued said bill of lading did not weigh the cotton which it received and shipped under said bill of lading issued at Birmingham, Alabama, but the shippers, Smith & Coughlan entered on the bill of lading which was brought to the agent of the defendant to sign for cotton the weight of 25,637 pounds. That at the time said bill of lading was issued, and prior thereto, there was in the city of Birmingham, Alabama, a duly organized corporation, known as the Railroad Compress Company, which was authorized by its charter to receive cotton for compression and to issue certificates or receipts therefor, and that it was the custom at Birmingham, Alabama, among merchants, factors and cotton buyers who were dealing in cotton to deliver to said compress company bales of cotton which were not compressed, at its

place of business, for the purpose of having them compressed, and taking in receipt therefor certificates addressed to the agent of some railroad company operating in Birmingham, certifying that a certain number of bales of cotton bearing certain marks had been delivered to said compress company by said merchant, factor or cotton buyer for shipment by some particular railroad, but that the plaintiff had no notice or knowledge of such custom. That on the 9th day of April, 1903, said Railroad Compress Company issued a certificate, numbered 315, addressed to the A. G. S. Railroad Company, the defendant, certifying that Smith & Coughlan had delivered to said compress company fifty bales of cotton for shipment, marked A. H. J., weighing 25,637 pounds; that the same were in a railroad car marked C. & N. W. 61,222. The original of said certificate of said compress company may be introduced in evidence on the trial of this cause without further proof.

"That at the time said certificate was issued by said compress company to the defendant, the said compress company had in its compress for compression for the said Smith & Coughlan fifty bales of cotton, which were shipped in and delivered to the said comprress company over the line of the defendant from Eutaw, Alabama, consigned to the said Smith & Coughlan in car C. & N. W., No. 61,222.

"That the cotton received by the defendant for shipment to plaintiff, and as loaded in the car, as heretofore mentioned, was loaded in the car for shipment over the line of the defendant to be delivered at Durham, North Carolina, to the order of said Smith & Coughlan, with instructions to notify the Commonwealth Cotton Manufacturing Company, and that the agent of the defendant issued the said bill of lading on said certificate of the compress company, without any knowledge or notice that the weight of the cotton was not as described in said certificate issued by said compress company, or that there was any material deficiency in the same, or that the weights of the cotton as delivered to said compress company had been in any manner changed. That said

cotton was delivered to the defendant by said compress company in a sealed car, and thereupon the agent of the defendant issued to Smith & Coughlan the bill of lading which is hereto attached. That said cotton was not weighed by the agent of the defendant, or by anyone for the defendant, but that the agent of defendant issued its bill of lading on the faith of and relying on the certificate issued by the compress company and not knowing of the deficiency in weight.

"That the defendant did not know the weight of the cotton in the cars, but did know that fifty bales of cotton had been placed in the compress for the said Smith & Coughlan not long prior to the issuance of said certificate, and that the weight of said fifty bales of cotton, so placed in the compress for said Smith & Coughlan, would aggregate something in the neighborhood of the weight mentioned in the certificate.

"That the plaintiff received from the defendant, or its connecting carriers the same cotton, without change, which was delivered to the defendant by said compress company in said car, and as expressed in said certificate, except instead of the cotton weighing 25,637 pounds it weighed in fact 14,305 pounds; and the said cotton was delivered to the plaintiff in the same car C. & N. W. 61,222, in which it was loaded in Birmingham, Alabama; that the defendant and its connecting carriers did not lose or misappropriate any of said cotton, but delivered the cotton to the plaintiff as received by them at Durham, N. C., in exactly the same condition in which the defendant received it from the compress company at Birmingham, and the plaintiff paid the money on said cotton at Durham, N. C., before said cotton was received.

"That J. H. Coughlan, who was the president of the said Railroad Compress Company, and who was the shipper of the cotton, knew of the shortage in the weights of said cotton, but falsely represented the weights thereof to the agent of defendant, or permitted the Railroad Compress Company to falsely represent the same to the agent of the defendant, and the agent of the defendant

was deceived through the said J. H. Coughlan, the shipper aforesaid, as to the weight of said cotton."

Plaintiff then introduced in evidence the bill of lading, which is set out in the record as "Exhibit A;" the invoice, which is set out in the record as "Exhibit B," and the sight draft drawn by Smith & Coughlan on the plaintiff.

A. G. & E. D. SMITH, for appellant.—In actions *ex delicto* the law of the jurisdiction in which the wrong complained of culminated, that is to say, in which the act that made the cause of action complete was performed, controls the rights and obligations of the parties.—Minor's Conflict of Laws, § 195; *Alabama Great Southern R. R. Co. v. Carroll*, 97 Ala. 126, which is the leading American case on this subject; *Rundel v. Del. & Raritan Cable Co.*, 14 How. 80; *Ruckman v. Greene*, 9 Hun. 225; *Barney r. Burnstein*, 64 Barb. 212; *LaForest v. Tolman*, 117 Mass. 109; *Needham v. Grand Trunk Ry.*, 38 Vt. 294; *Railroad Co. r. Doyle*, 60 Miss. 977; *Railway Co. v. Foster*, 10 Lea, 352 (Tenn.).

It requires no argument to demonstrate the proposition that in the case at bar the cause of action arose, if at all—that is to say, that the alleged wrong complained of culminated and the alleged cause of action became complete—upon the performance of acts that were performed in the state of North Carolina, for it was in that state that the bills of lading were used for the purpose of inducing the advances thereon made by the plaintiffs, and it was here that those advances were made and the money actually paid. Here, then, occurred both the wrong and the injury. Acts performed in North Carolina made plaintiff's right to sue, if it exists at all, complete.—*Armour et al. v. Michigan Central R. R. Co.*, 65 N. Y. 111, 119.

Now, there is no statute in North Carolina which affects the rights or obligations of the parties to a transaction such as that from which the case at bar arose, or if there be such a statute it was not introduced in evidence, and the common law is presumed to prevail in that state. The rights and obligations of the parties are fixed by

the general commercial law, and that law, as interpreted by the courts, imposes no liability upon the defendant.— *Schooner "Freeman," etc. v. Buckingham et al.*, 18 How. 182; *Pollard v. Vinton*, 105 U. S. 7; *Friedlander v. Texas & Pacific Ry. Co.*, 130 U. S. 416; *Robinson et al. v. Memphis & Charleston Ry. Co.*, 9 Fed. Rep. 129 (W. D. Tenn.); *Crenshawe v. Pearce*, 37 Fed. Rep. 432 (S. D. N. Y., Brown, J.); *"The Guiding Star,"* 62 Fed. Rep. 407 (Circuit Court of App. 6th Circuit).

The same doctrine has been applied when the agent, instead of acting in fraudulent collusion with the shipper, has by honest mistake and in regular performance of his duties issued bills of lading for an amount of goods exceeding that actually delivered to him.—*Iron Mountain Ry. v. Knight*, 122 U. S. 79; *The "Soon,"* 7 Blatch 244; *The "L. J. Farrell,"* 15 Fed. Cas. 707; *Sutton v. Kettrell*, 23 Fed. Cas. 469; *The "Asphodel,"* 53 Fed. Rep. 835; *Maddock v. American Sugar Refining Co.*, 91 Fed. Rep. 166; *The "Willie D. Sandhovel,"* 92 Fed. 286; *Hazard et al. v. Illinois Central Ry. Co.*, 7 So. 280.

The same principle, in the absence of statute, applies in the case of the delivery of goods evidenced by a bill of lading allowed to remain outstanding after the delivery of the goods and used by the consignee or endorsee as the means of securing an advance of money. For a full discussion of the law on the subject, see *Mairs v. B. & O. R. R. Co.*, 73 App. Div. 265.

The same principle, of course, applies to the case of stolen bills of lading. See *Shaw v. Railroad Co.*, 101 U. S. 557..

But even if the law of Alabama should govern, our contention is that plaintiff cannot recover. Presumably plaintiff has brought this suit under the influence of section 4223 of the code, upon the theory that defendant has issued a "false" bill of lading.

We think it is thoroughly established in this state, that a bill of lading issued under these conditions is not a "false" bill of lading.—*Thompson v. Ala. Mid. Ry. Co.*, 122 Ala. 378.

The bill of lading not being a "false" bill of lading, the

statute does not govern, but the common law will govern
in this case.

If we are correct about this, then the defendant would
not be responsible for the issuance of the bill of lading
by its agent.—*Jasper Trust Co. v. K. C. M. & B. R. R.
Co.*, 99 Ala. 416; see also authorities cited *supra* in the
first proposition, on this point.  Aside from this, the bill
of lading limited the liability of the defendant, in that,
it stated that the contents of the packages were un-
known, and that the weights were subject to correction;
this is shown by the agreed statement of facts, and by
the bill of lading itself. · The agreed statement of facts
also shows that the defendant delivered to the plaintiff
*all* the cotton defendant actually received for shipment
to plaintiff.  This being true, the defendant is not liable
for the deficiency in weight in the cotton.

A clause in a bill of lading reciting that the weight or
quantity is unknown qualifies the effect of other state-
ments as to amount of weight, and authorizes proof to
show that a less amount was in fact received, and no re-
covery can be had against the carrier if it in fact deliv-
ered all it received.—*The Querini Stamphelia*, 19 Fed.
123; *Clark v. Barnnell*, 12 How. 272; *St. Louis &c Ry v.
Knight*, 122 U. S. 79, 87; *The Dixie*, 46 Fed. 403; 4 Am.
& Eng. Ency. Law (2 Ed.), 535 and note 4; 2 Daniel,
Neg. Inst. p. 662; Hutchinson on Carriers, § 125, p. 136.

Bills of lading issued by common carriers are not ne-
gotiable, and a *bona fide holder* for value is not protected
as one is protected when holding paper that is negoti-
able.—*Pollard v. Vinton*, 105 U. S. 7; *Jasper Trust Co.
v. K. C. M. & B. R. R. Co.*, 99 Ala. 416; *Haas & Co. v.
Citizens Bank*, 39 So. Rep. 129; *Little Rock v. Hall*, 32
Ark. 696; 4 Ency. Law, 2 Ed., 532-536, and note;*Kelly
v. Bowker*, 11 Gray 428; *Miller v. R. R. Co.*, 90 N. Y. 430;
*Grant v. Norway*, 10 C. B. 665; *Crenshawe v. Pearce*, 37
Fed. Rep. 432.

JOHN B. WEAKLEY and CABANISS & WEAKLEY, for ap-
pellee.—A bill of lading is a written acknowledgment
by a carrier of the receipt of certain goods, and an agree-

ment, for a consideration to transport and deliver the same at a specified place to a person therein named, or to his order.—4th Am. & Eng. Ency. of Law, 2nd Ed. p. 510-54; Porter on Bills of Lading Par. 1-2; *St. Louis I. M. & S. R. R. v. Knight,* 122 U. S. 79; 14 Central Law Journal, page 22; *Wayland's Admr. v. Moseley,* 5 Ala. 430; *McTyer v. Steele,* 26 Ala. 487.

In actions against common carriers founded on the bill of lading, the bill must be taken as the sole evidence of the contract of shipment, and cannot be varied by parol evidence.—*Tallassee Company v. Western Railway,* 117 Ala. 520; *Logan v. Mobile Trade Co.,* 46 Ala. 514.

A bona fide purchaser of a bill of lading may hold the carrier responsible who issued it, although the bill is issued to a fictitious party, and although no goods were ever received.—*Jasper Trust Co. v. K. C. M. & B. R. R.,* 99 Ala. 416; Code of Alabama, Section 4223; *Dean v. Driggs,* 19 L. R. A. 302 and note; *Armour v. Michigan Central R. R.,* 65 N. Y. 111.

Prior to the enactment of section 4223 of the Code, if the agent of a railroad company issued a bill of lading for goods which were not delivered to him, the railroad was not liable because the agent acted beyond the scope of his authority.—*Pollard v. Vinton,* 105 U. S. 7; *Iron Mountain R. R. Co. v. Knight,* 122 U. S. 79; *Friedlander v. T. P. R. R. Co.,* 130 U. S. 416

This rule is now changed in this State by the statute referred to.—*Jasper Trust Co. v. K. C. M. & B. R. R.,* 99 Ala. 416.

A distinction exists between the issuance of a bill when no goods were received, and the issuance of a bill for a greater quantity than is shipped. In either event the railroad company is liable to the innocent holder of the bill of lading for value.—*Chandler v. Sprague,* 38 Am. Dec. 414 and note.

As between the shipper of goods, and the owner of the vessel a bill of lading may be explained so far as it is a receipt; that is as to the quantity of the goods shipped, and their condition and the like, but as between the owner of a vessel, and an assignee for a valuable consid-

eration paid on the strength of the bill of lading, it may not be explained.—*Dickerson v. Seelye,* 12 Barb. N. Y. 102; *Relyea v. New Haven, etc..* 42 Conn. 579; 4th Am. & Eng. Ency. of Law (2nd Ed.) p. 535-6.

As between the railroad company, and any one who shows himself to be a bona fide transferee and purchaser of the bill of lading, the corporation is estopped from denying that it received and holds the cotton specified in the receipt.—*Jasper Trust Company v. Railroad,* 99 Ala. 423.

The bill of lading issued in this case contains the words "Weight, subject to correction." The appellant contends that the insertion of these words releases it from liability. The authorities are otherwise.—*Relyea v. New Haven Rolling Mill Co.,* 42 Conn. 579; *Bradstreet v. Heran,* 2 Blatchf. C. C. R. 116; *Tibbitts v. Rock Island R. R. Co.,* 49 Ill. Court of Appeals, 567.

The appellee had no knowledge of the custom said to obtain in Birmingham, of issuing bills of lading upon the delivery of compress receipts, and therefore is not bound by it.—*Buyck & Cain v. Schwing,* 99 Ala. 359, and cases cited; 29 Am. & Eng. Ency. of Law (2nd Ed.) 387-8.

SIMPSON, J.—This is an action by the consignee of 50 bales of cotton, which were shipped by a broker in Birmingham, Ala., from whom the plaintiff (appellee) had bought the cotton, to the appellee in North Carolina; the bill of lading having been sent to appellee, with draft attached, which was paid. It is acknowledged that the cotton actually received by the carrier was delivered; the damages being claimed because the bill of lading stated the weight of the cotton to be 25,637 pounds, when, in fact, it weighed only 14,305 pounds. It is agreed that the railroad company's agent did not weigh the cotton when it was received, but accepted the weights as set out in the bill of lading by the shipper, and that the "railroad company had no knowledge or notice that the weight of the cotton was not as described in the bill of lading, and that said company issued said bill of lading upon a certificate furnished it by the shippers from the

compress company, stating that the shippers had delivered to said compress company for shipment 50 bales of cotton of the weight of 25,637 pounds." Said cotton was delivered to the carrier by the compress company in a sealed car, and the particular weight shown in the exhibit was made out by the shipper, and not by the carrier's agent. The bill of lading contained the words (after acknowledgment of the receipt of property described below) "Contents and condition of contents of packages unknown."

The general principle is, in so far as a bill of lading is a receipt, it is "only prima facie evidence that the carrier has received the goods, or that it has received the quantity named; and, like all mere receipts, they may be shown to have been given by mistake or not to speak the truth."—Hutchinson on Carriers (2d Ed.) § 122. The practice among carriers or their agents of signing bills of lading before the actual receipt of the goods has given rise to a considerable amount of litigation; and, while there are a few cases to the contrary, it is fully settled now, by the great weight of authority that such bills of lading, whether in the hands of the original party or of an assignee, do not create any liability against the carrier. The theory of these cases is that the agent of the carrier has no authority to give a bill of lading until the goods are received for transportation, and the party who takes such a bill of lading has full knowledge of the want of authority.—Hutchinson on Carriers (2d Ed.) § 123; *Pollard v. Vinton,* 105 U. S. 7, 26 L. Ed. 998; *Friedlander v. T. & P. R. R. Co.,* 130 U. S. 416, 9 Sup. Ct. 570, 32 L. Ed. 991.

In order to protect the holders of such bills of lading our statute was passed.—Code 1896, § 4223. And an important question to be decided in this case is whether or not such statute fixes the liability of the carrier in this case. The decisions of the English courts, in regard to the similar act (St. 18 & 19 Vict. c. § 3), are not controlling, as said act provided that such bills were conclusive "as against the master or person signing the same," and the decisions that the act does not apply are based upon

the very technical point that only the person actually signing the bill of lading, to-wit, the master of the vessel and not the owner, is bound by it.—*Blanchard v. Powell*, 9 Law Rep. Court of Ex. 74; *Jessel v. Bath*, 2 Law Rep. Court of Ex. 267; *Brown v. P. D. & S. C. Co.*, 10 Law Rep. Court of C. P. 562. This section of our Code came before our own court in a case in which the agent of the railroad issued a bill of lading to a fictitious firm for goods never received, and indorsed it in the name of said fictitious firm. While the court held that ordinarily the railroad company would be liable to a bona fide indorsee, by virtue of the statute only, yet in this case, from the fact that the party to whom the bill of lading was issued was fictitious, the indorsee should have informed himself as to whether there was such a firm, and, failing to do so, could not claim the protection of the act.—*Jasper Tr. Co. v. K. C., M. & B. R. R. Co.*, 99 Ala. 416, 14 South. 546, 42 Am. St. Rep. 75. The court affirms the doctrine of the nonliability of the railroad company without the aid of the statute, either to the original holder or to the indorsee of the bill, and states that "its whole intention was to punish and prevent the giving of a bill of lading when the property or thing was not in fact received for transportation. * * * It was enacted to prevent fraud, sometimes perpetrated through spurious bills of lading. * * * The statute must not be construed as altering the common law, or as making any innovation therein further than the words import."—*Jasper Tr. Co. v. K. C., M. & B. R. R. Co.*, at pages 422, 423 of 90 Ala., pages 548, 549 of 14 South. (12 Am. St. Rep. 75). This view of the statute was also adopted by this court in the case of *Thompson v. Ala. Midland R. R. Co.*, 122 Ala. 378, 24 South. 931. Taking, then, the history of this statute, its clear purpose, so forcibly expressed by STONE, C. J., as well as its language, we hold that it provides only for those cases where the carrier, "not having received things or property for carriage, shall give or issue a bill of lading, or receipt, as if such things or property had been received," or giving duplicates, etc.

In the case now before the court the agreement of parties as to the fact shows that there was no issuing of a false bill of lading, and no fraud practiced; that the 50 bales of cotton were, in fact, received and delivered, but simply did not weigh as much as the bill of lading stated; that the railroad company did not know of the deficiency, and the fraud was perpetrated by the consignor, from whom the consignee purchased the cotton. In giving this bill of lading the agent of the carrier acted within the scope of his duties; the goods purporting to be what the bill of lading stated were, in fact, received. The statute then does not apply, and we must look to the general principles of the law in order to determine the liability of the carrier. This interpretation of the statute is in accordance with that placed upon a similar statute by the Supreme Court of New York in the case of *Dean v. Driggs* (N. Y.) 33 N. E. 326, 19 L. R. A. 303, 309, 33 Am. St. Rep. 721.

Counsel for appellee insist that, notwithstanding the general rule in regard to cases where the goods were not delivered at all, yet, where there was, as in this case, a delivery of the goods, but not of the quantity named, the carrier is estopped from controverting the statement of quantity in the bill of lading as to an innocent holder of the bill, and they refer to the able note of Judge Freeman to the case of *Chandler v. Sprague*, (Mass.) 38 Am. Dec. 409-414. In that note the learned annotator gives some cogent reasons in opposition to the rule in regard to cases where there was no deliverer of the goods, but states that "the overwhelming weight of authority, however, is in favor of the doctrine that, even as against a bona fide consignee or indorsee, the shipowner is not estopped by the bill of lading from showing that no goods were shipped, as therein stated." Note, pages 410, 411. He goes on to cite cases in which it has been held that the same principle (to-wit, that the owner is not responsible because the agent had no authority to sign for more goods that he received) applies to a case of deficiency, but we think very properly draws the distinction to the effect that, when the agent gives a bill of lad-

ing for goods actually received, he is acting within the scope of his authority—"he has not acted outside of his authority, but has merely abused it." And states that, "where the master or agent misrepresents the quantity of the goods," it seems to be just that he who confers the authority should be responsible. Page 414. The learned judge also states (on a point which will be taken up presently) that "if a bill of lading contains the clause 'weight unknown,' or any clause of similar import, it is clear that the carrier is not held to warrant the weight to be as specified, and that he is not thereby estopped to show, as against the shipper or any holder of the bill of lading, that the weight was less than that stated, and that all the goods received were delivered." Page 413. The able annotator also cites the case of *Miller v. Hannibal*, 24 Hun (N. Y.) 607, to the effect that where a bill of lading receipted for a certain number of "barrels of eggs," when, in fact, the barrels contained nothing but sawdust, the carrier was estopped, as against the bona fide indorsee, who had paid for the eggs. Page 412. This case came up for review in the Court of Appeals of New York and was reversed. The bill of lading, in the printed part, stated, "Contents unknown," and in the written part they were described as "thirty barrels of eggs," and the court said: "The volume and method of the business of transportation by railroads and transportation lines render it practically impossible in most cases for the carrier to ascertain, by examination, the contents of packages received for carriage, and when he qualifies his receipts, as in this case, we know of no reason why parties dealing upon bills of lading, so qualified, shall not be held to notice of the qualification."—*Miller v. Hannibal*, 90 N. Y. 430, 435, 43 Am. Rep. 179.

In the case of *Relyea v. New Haven Rolling Mills Co.*, 42 Conn. 579, the bill of lading was for a certain number of tons of scrap iron, with no qualifying words, and the court, citing *Sears v. Wingate*, 3 Allen (Mass.) 103, to the effect that the master or owner is responsible "when the consignee is deceived thereby, provided the statements are those which the master knew, or ought

to have known, were erroneous, and the incor-
rectness of which he had the means' of discov-
ering," states that, "it was his duty [that is, the mas-
ter's] either to have ascertained the true weight, or to
have refused to sign a clean bill;" and consequently al-
lowed the holder of the bill to recoup to the amount of
freights sued for. In said Sears Case, supra, it was a
"clean bill" of lading, and a suit by the carrier for the
freight, and the right to recoup for deficiency was denied.
The opinion is by Judge Hoar, who cites a number of
cases, among them *Shepherd v. Naylor*, 5 Gray (Mass.)
531, to the effect that "if the bill of lading expressed the
number of bundles, adding the aggregate number of
weight, probably the shipowner would be responsible for
the number of bundles, because that is visible and easily
ascertained, and may identify the shipment, but the
weight would be an immaterial circumstance," and goes
on to state that "the master himself is not answerable
for a misstatement in any particular, which, according
to the uses of trade, would be regarded as merely an esti-
mate, and not a statement of a fact within his knowl-
edge;" also that if the statement of weight was "erron-
eously, but not fraudulently, made," it would be open to
explanation. See, also, *Dean v. Driggs, supra.*

The strongest case in favor of the contestation of the
appellee which has come to our notice is that of *Tibbits
v. R. I. & P. Ry. Co.*, 49 Ill. App. 567. In that case the bill
of lading had, in the printed part, the words "Contents
and value unknown," and receipted for 38,600 pounds of
corn and really contained only 24,264 pounds. The
grounds on which the court held the carrier liable were,
first, that the words "Contents and value unknown,"
evidently intend to refer to packages, while in that case
the corn was loaded into the car from the elevator; and,
second, as the weight was stated in a column ruled for
that purpose, over which was printed, "Subject to cor-
rection," while that would cover ordinary mistakes, it
would not cover so large a deficit, where the corn was in
bulk, as "such a difference would be apparrent to the

sight, and it would require no test of weighing to show that it existed." Even if we were to follow this case to its full extent, and even if the bales of cotton had been visible when delivered to the carrier, the case now before the court is differentiated from it by the facts that the cotton was not in bulk, but in 50 bales, and 50 bales were delivered and we could not say that the difference was such as to be apparent to the sight. On the other hand, the great weight of authority is that while the carrier may bind himself as to the quantity receipted for by express stipulation, and while there may be cases in which the carrier is liable because of fraud or intentional misstatement, or of such gross overvaluation as to be evidence of fraud, yet in a case like this, where the goods were stated to be 50 bales of cotton and 50 bales were delivered, where the bill of lading contained the saving clause as in this case, the carrier was not responsible for the deficiency in weight. As stated by Lord Mansfield: "If the master qualifies his acknowledgment by the words 'Contents unknown,' he acknowledges nothing." Hutchinson on Carriers (2d Ed.) § 125a; Porter on Bills of Lading, pp. 38, 39, 40, 43; *Abbott v. N. S. S. Co.*, 33 Fed. (D. C.) 895; *Law v. Botsford*, 26 Fed. (D. C.) 651; *St. L., Iron Mountain & S. Ry. v. Knight*, 122 U. S. 79, 85, 7 Sup. Co. 1132, 30 L. Ed. 1077; Ray on Negligence of Imposed Duties, p. 105, § 28.

The judgment of the court is reversed, and the cause remanded.

TYSON, DOWDELL, and ANDERSON, JJ., concur.