# National Park Bank *v.* L. & N. R. R. Co.

### Assumpsit.

(Decided February 1, 1917.   74 South. 69.)

1. **Appeal and Error; Review; Sustaining Demurrers; Grounds.**—Where there are several grounds of demurrer, some of which are sufficient and others insufficient, and the judgment sustaining the demurrer is general, the ruling will be referred to the grounds that are well taken.

2. **Conspiracy; Civil Liability; Act of Coconspirator.**—Where a conspiracy is established, all conspirators are civilly liable for the act of any in pursuance of the original plan and for the common object, though not intended as a part of the original design.

3. **Corporations; Torts; Conspiracy; Civil Liability.**—An action may be maintained against a corporation for damages caused by a conspiracy in which it participated.

4. **Corporations; Torts; Conspiracy; Authority of Agent.**—To render a corporation liable for damages caused by a conspiracy in which it participated, it is not necessary that the officers or agents through whom it acted had authority to perform all the acts done in execution of the conspiracy, or agreed to be performed by the other conspirators.

5. **Corporations; Torts; Conspiracy; Civil Liability; Authority of Agent.**—To render a corporation liable for a conspiracy, it is necessary that any

[National Park Bank v. L. & N. R. R. Co.]

essential act which was agreed the corporation's agent should do must be done by the agent acting for the corporation and within the line and scope of his employment, and in the prosecution of the corporation's business.

6. **Conspiracy; Civil Liability; Completion of Conspiracy.**—Only those participating in a conspiracy to its completion in acts which injure plaintiff are liable therefor, since the law always leaves a place of repentance to a conspirator.

7. **Conspiracy; Civil Liability; Damage; Proximate Cause.**—To render a conspirator liable for injuries caused thereby to plaintiff, the act under the conspiracy need not be the sole proximate cause of the injury, but must be at least a concurring proximate cause thereof.

8. **Conspiracy; Civil Liability; Pleading.**—A complaint for conspiracy must allege the acts done in pursuance of the conspiracy to plaintiff's injury definitely and accurately, so that if the facts are admitted the court can draw the legal conclusion therefrom.

9. **Pleading; Conclusions; Authority of Agent.**—In an action against a corporation for conspiracy, an allegation that the acts committed by the agent of the corporation in furtherance of the conspiracy were within the scope of his employment is a conclusion of the pleader and insufficient.

10. **Carriers; Bill of Lading; Liability; Statute.**—Code 1907, section 6136, making a carrier which issues a bill of lading without having received the property described therein liable to an innocent holder of the bill, imposes such liability only when the bill was issued by an agent having authority to issue genuine bills, or by some one under his direction or authority, so as to make it his own act, but does not make the carrier liable for spurious bills of lading issued by an agent who had only. authority to supervise other agents authorized to issue bills of lading, or by unauthorized persons acting under that agent.

11. **Carriers; Bill of Lading; Liability; Issuance by Stranger.**—That section does not authorize an agent having power to issue bills of lading for property received to empower third persons not in the carrier's employ or in the prosecution of its business to issue at will bills of lading without receipt of the property to be shipped.

12. **Carriers; Liability; Connecting Carrier.**—In the absence of a special contract or of a relation of partnership or agency between the initial and connecting carrier, a connecting carrier is liable only for loss or damage occurring on its own line.

13. **Conspiracy; Complaint; Authority of Agent.**—In an action against a railroad for conspiracy to defraud by the issuance of false bills of lading, allegation that defendant's agent through the influence of defendant's relation with connecting carriers agreed to have those carriers deliver cotton shipped on genuine bills of lading on surrender of the spurious bills of lading theretofore issued, does not allege any acts within the scope of his employment, for which the railroad is liable, since such deliveries by connecting carriers were not within the scope of defendant's business.

14. **Conspiracy; Civil Liability; Several Acts.**—The fact that a railroad shipper conspired to issue spurious bills of lading upon which the railroad through its business associates procured the delivery at the point of destination of goods subsequently shipped on genuine bills, and on which plaintiff suffered no loss, does not make the carrier liable for loss caused by other spurious bills issued by the shipper on which no shipments were made, and

[National Park Bank v. L. & N. R. R. Co.]

of which it was not shown to have had knowledge, since the issuance of each false bill of lading was a separate criminal offense or cause of civil action.

**15. Conspiracy; Complaint; Allegation of Conspiracy.**—In a civil suit as well as in a criminal prosecution, the conspiracy must be sufficiently charged; it cannot be aided by averments of acts done by one or more of the conspirators in furtherance of the plot.

**16. Conspiracy; Complaint; Course of Business.**—In a complaint for conspiracy between a railroad company and a shipper, a count which alleged that it had become a course of conduct or business between the conspirators for the shipper to issue false bills of lading, and for the railroad thereafter to cause cotton shipped on genuine bills to be delivered on the false bills, and that in consequence the public engaged in the cotton trade were induced to believe that the shipper was legitimately engaged in the sale of cotton on a large scale, and to give him credit on future false bills of lading, does not show a liability on the part of the carrier for loss sustained by the issuance of subsequent spurious bills of lading on which no cotton was delivered, and which were issued without the carrier's authority.

**17. Conspiracy; Complaint; Insolvency of Conspirator.**—The additional allegation that the shipper was insolvent, and that that fact would have been discovered long prior to the issuance of bills of lading which caused plaintiff's loss, does not show liability on the part of the carrier.

**18. Pleading; Conclusions; Proximate Cause.**—Averments in a count for conspiracy that the proximate cause of plaintiff's loss was the continuance in business of one of the conspirators, and the fraudulent conduct of such business, were conclusions of the pleader.

**19. Pleading; Complaint; Construction Against Pleader; Alternative Allegations.**—Where the complaint alleges that one of two things is true, the complaint must be held insufficient, unless each alternative allegation is sufficient, since the complaint must be construed most strongly against the pleader.

**20. Conspiracy; Complaint; Authority of Agent.**—A count for conspiracy, which alleges that the duties of the agent were to supervise the carrier's foreign shipments, to issue or cause to be issued by his subordinates bills of lading therefor, to procure deliveries of cotton under bills of lading issued by it, or purporting to be issued by it, and to adjust complaints, inquiries, and difficulties arising between the consignees of the cotton and the holders of bills of lading, does not show that the delivery of cotton by connecting carriers, nor the authorizing of the issuance of bills of lading by third parties without the receipt of the property, was within the scope of the agent's employment.

**21. Carriers; Authority of Agent; Scope of Business.**—The fact that cotton had been previously delivered by connecting carriers upon spurious bills of lading of defendant does not show that the issuance of subsequent bills of lading was within the scope of the authority of defendant's agent.

**22. Carriers; Authority of Agent; Scope of Business.**—It is beyond the scope of a carrier's business to adjust controversies between consignees of property shipped over another carrier, and the holders of bills of lading purporting to be those of other carriers.

**23. Fraud; Fraudulent Concealment.**—To maintain an action for fraudulent concealment, there must be shown a duty to disclose the truth, and that the disclosure was not made when opportunity was presented whereby the party to whom the duty was due was induced to act to his injury.

24. **Fraud; Complaint; Fraudulent Concealment.**—In a count for conspiracy to defraud by the delivery of cotton on spurious bills of lading, allegations .that by willfully deceiving or causing to be deceived, or making false representations or fraudulently suppressing or causing to be suppressed truth from the holders of the false bills of lading when their complaints were referred to defendant's agent, a course of business was established by which the coconspirator were enabled to sell a large number of their drafts with false bills of lading attached, does not sufficiently allege the duty to disclose the truth, nor the concealment thereof, since it does not show, except by conclusion, what the complaints were, nor show any facts which made the alleged suppression of the truth calculated to deceive the plaintiff.

25. **Appeal and Error; Review; Rulings of Complaint; Exhibit.**—On appeal from the sustaining of a demurrer to a complaint which made a bill of lading part thereof, where the bill does not appear in the record,,the ruling must be affirmed on the presumption in favor of its correctness.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by the National Park Bank of New York against the Louisville & Nashville Railroad Company for fraud and in assumpsit. Demurrers were sustained to several counts of the complaint whereupon plaintiff took a non-suit and appeals. Affirmed.

PERCY, BENNERS & BURR; CALLAHAN & HARRIS and LOUIE DOILE for appellant. GREGORY L. SMITH and JOHN C. EYSTER for appellee.

THOMAS, J.—On former appeal count 5 was held subject to demurrer.—*L. & N. R. R. Co. v. National Park Bank,* 188 Ala. 109, 65 South. 1003.

On the second trial, count 5 was amended, and counts A, B, C, D, E, F, and G were added, seeking to recover damages arising out of an alleged conspiracy between Knight, Yancey & Co., and one of the defendant's agents. Counts H, I, J, and K sought to recover for a fraud alleged to have been perpetrated on the part of defendant's agents, acting within the line and scope of their authority, and with Knight, Lancey & Co., that estopped the defendant to deny liability. Demurrer was sustained; plaintiff took a nonsuit, and prosecutes this appeal.

(1) The rule prevailing in this state is that, where there are several grounds of demurrer, some of which are sufficient and others insufficient, and the judgment sustaining the demurrer is general, the ruling will be referred to the grounds that are well taken.—*Steiner v. Parker & Co.,* 108 Ala. 357, 19 South. 386;

*Tatum v. Tatum,* 111 Ala. 209, 20 South. 341; *Richard v. Steiner Bros.,* 152 Ala. 303, 44 South. 562; *McDonald, et al. v. Pearson,* 114 Ala. 630, 641, 21 South. 534; *Hull v. Wimberly & Thomas Hdw. Co.,* 178 Ala. 538, 59 South. 568.

The insistence of appellant's counsel is as follows: "In the outset we wish to impress upon the court that the complaint under consideration is not based upon any right to recover, either under the common law or our statute, upon the issuance alone of the bills of lading by an agent of the company. We recognize that under our decisions the issuance by an agent of a bill of lading covering goods not received for shipment has been held to be ultra vires and not binding the railroad company. We have attempted in drawing the amendment to the complaint to aver clearly, more fully in some counts than in others, the doing by the defendant of a series of acts or a single act in furtherance of the system contemplated by the conspiracy, and that a system or general course of conduct thus made possible through furtherance of the conspiracy was the proximate cause of the plaintiff's damage."

(2) As preliminary to the consideration of the conspiracy counts we may state the general rule of conspiracy in civil cases, where a corporation has participated:

(1) If the conspiracy is properly alleged, and there is also alleged the doing by one of the conspirators of the unlawful act pursuant to the conspiracy, which resulted in the damage, the act so done by any of the participants in pursuance of the original plan and with reference to the common object, is in contemplation of the law the act of all.—*Smith v. State,* 52 Ala. 407; *Jordan v. State,* 79 Ala. 9; *Williams, et al. v. State,* 81 Ala. 1, 1 South. 179, 60 Am. Rep. 133; *Amos v. State,* 83 Ala. 1; *Gibson v. State,* 89 Ala. 121, 8 South. 98, 18 Am. St. Rep. 96; *Martin v. State,* 89 Ala. 115, 8 South. 23, 18 Am. St. Rep. 91; *Ex parte Bonner,* 100 Ala. 114, 14 South. 648; *McLeroy v. State,* 120 Ala. 274, 25 South. 247; *Sheppard v. State,* 172 Ala. 363, 55 South. 514; *Watson v. State,* 181 Ala. 53, 61 South. 334. In *Carlton v. Henry, set al.,* 129 Ala. 479, 29 South. 924, this court said:

"A doctrine applicable to civil as well as criminal cases is that where two persons enter into a combination to do unlawful act, whatever is done by one as the proximate consequence of furthering the main purpose of the conspiracy, whether specifically in-

cluded in that purpose or not, is the act of both and binds both to responsibility."—Cooley on Torts, § 143; 8 Cyc. 645.

That is to say, each conspirator is responsible for everything done by his confederates which the execution of the common design makes probable in the nature of things as a consequence, even though such a consequence was not intended as a part of the original design or common plan.—*Jones v. State,* 174 Ala. 53, 57 South. 31; *Martin v. State, supra; Gibson v. State, supra; Ferguson v. State,* 134 Ala. 63, 32 South. 760, 92 Am. St. Rep. 17; *Griffith v. State,* 90 Ala. 583, 8 South. 812; *Morris' Case,* 146 Ala. 66, 41 South. 274; *Ferguson v. State,* 149 Ala. 21, 43 South. 16. The act, however, must be the ordinary probable effect of the wrongful act specifically agreed on, so that the connection between them may be reasonably apparent, and not an independent product of the mind of one of the confederates outside of or foreign to the common design (*Martin v. State, supra,* 89 Ala. 115, 8 South. 23, 18 Am. St. Rep. 91, and note; *Powers v. Commonwealth,* 110 Ky. 386, 61 S. W. 735, 63 S. W. 976, 53 L. R. A. 245; *State v. Taylor,* 70 Vt. 1, 39 Atl. 447, 42 L. R. A. 673, 67 Am. St. Rep. 684), nor a result growing out of the individual malice, motive, or purpose of the perpetrator, having no relation to the business of the master (*Republic I. & S. Co. v. Self,* 192 Ala. 403, 68 South. 328, L. R. A. 1915F, 516; *Martin v. State,* 89 Ala. 115, 8 South. 23, supra; 18 Am. St. Rep. 91, and note; *Spencer v. State,* 77 Ga. 155, 3 S. E. 661, 4 Am. St. Rep. 74; *Powers v. Com., supra*).

(3) (2) An action may be maintained against a corporation for damages caused by a conspiracy in which it participated.

(4) (3) To bind a corporation for damages caused by such conspiracy, it is not necessary for the officers or agents through whom the corporation acts and did act to have had authority to perform all of the acts done in the execution of the conspiracy, or agreed to be performed by other confederates in the execution of the conspiracy; but

(5) (4) That, as to any essential act which the conspiracy contemplated and which it was agreed that the agent of the corporation should do, it is necessary that such act agreed upon by the corporation be in fact done by its agent for such corporation, and that, while so doing, the agent was acting within the line and scope of his employment by such corporation and in the prosecution of its business. That is to say, the act agreed to be per-

formed by the agent of the corporation must have been within the line and scope of his agency and of the master's business, and essential or necessary to the accomplishment of the end of the conspiracy, and have been in fact done by such agent pursuant to the conspiracy.

(6) A conspiracy is not completed without its execution to damnifying results. Those participating to that end only are responsible. There is always a place of repentance—a locus pœnitantiæ—ever left to a conspirator, so that before the act is done, either of the parties thereto may abandon the design and avoid committing the unlawful act, or the lawful act by the unlawful means agreed upon. A conspirator withdrawing cannot be held responsible for the wrongful act of his former confederates. In such case, it is their act, and not his.—*State v. Webb,* 216 Mo. 378, 115 S. W. 998, 20 L. R. A. (N. S.) 1142, 129 Am. St. Rep. 518, 16 Ann. Cas. 518; *United States v. Britton,* 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698. If a corporation's agent, having confederated for it, thereafter exercises the right of locus pœnitentiæ, declining to aid or participate further in the conspiracy to do the agreed act pursuant thereto, and does not contribute to the plaintiff's damage, neither such agent nor his principal can be held for the damnifying consequences. In such case the act would be that only of the participating, inciting, and encouraging confederates present, and of the *participating* confederates who were not present.—*State, ex rel. Attorney General v. Tally, as Judge, etc.,* 102 Ala. 25, 63, 65, 15 South. 722; *State v. Hamilton & Laurie,* 13 Nev. 386. For it is well established that no cause of action arises from a mere agreement to commit a wrong against another.

(7) There must be some wrongful act performed that was necessary to, and concurring in, the proximate cause of the injury to the person suing, or of the damage for which the suit is brought.—*L. & N. R. R. Co. v. National Park Bank, supra; Schwab v. Mabley,* 47 Mich. 572, 11 N. W. 390; *Hutchins v. Hutchins,* 7 Hill (N. Y.) 104; *Commercial U. A. Co. v. Shoemaker,* 63 Neb. 173, 88 N. W. 156; Cooley on Torts, 142, 144; 2 Hilliard on Torts, § 17, p. 256; 8 Cyc. 645; 4 Ency. Pl. & Pr. 737. The act need not be the sole proximate cause of the injury, but a concurring proximate cause thereof.

(8) As to the pleading in civil actions for damages the result of the execution of conspiracy we may note that actions on the

case have taken the place of the writ of conspiracy (*Mott v. Danforth*, 6 Watts [Pa.] 306, 31 Am. Dec. 468; *Parker v. Huntington*, 2 Gray [Mass.] 127; *Stevens v. Rowe*, 59 N. H. 578, 47 Am. Rep. 231; *Jones v. Baker*, 7 Cow. [N. Y.] 445); that the insertion in the complaint of an averment, that the acts done were in pursuance of a conspiracy, does not change the nature of the action on the case (*Strout v. Packard*, 76 Me. 156, 49 Am. Rep. 601; *Van Horn v. Van Horn*, 56 N. J. Law, 318, 28 Atl. 669; *Kimball v. Harman*, 34 Md. 407, 6 Am. Rep. 340; *Parker v. Huntington, supra; Schultz v. Frankfort Co.*, 151 Wis. 537, 139 N. W. 386, 43 L. R. A. [N. S.] 520; 5 Ruling Case Law, 1103; 8 Cyc. 673). The acts complained of, however, must be definitely and accurately stated, so that, if the facts themselves should be admitted the court can draw a legal conclusion therefrom—thus the illegal purpose or means, which the conspirators meant to accomplish or to resort to, must be described accurately, for unless the object is illegal, or the means agreed upon are illegal, there is no actionable wrong.—*Singer Sewing Machine Co. v. Teasley*, 198 Ala. 673, 73 South. 969; *Dwight Manufacturing Co. v. Holmes*, 198 Ala. 590, 73 South. 933; *Evans v. Ala.-Ga. Syrup Co.*, 175 Ala. 85, 56 South. 529; *McDonald v. Illinois Central Railroad Co.*, 187 Ill. 529, 58 N. E. 463; *Schwab v. Mabley, supra; Setzar v. Wilson*, 26 N. C. 501; *Porter v. Mack*, 50 W. Va. 581, 40 S. E. 459; Pollock on Torts, 365; Gould's Pl. (Wills) 301 et seq. and notes.

On former appeal this court said: "If the averment of the conclusion would suffice, and if it stood alone, it does not charge that the act done was within the scope of the employment of the defendant's agents; but if such was the case, and the pleader, after stating the conclusion, goes further and sets out the facts [showing] that there was no power in the agents the conclusion must yield to the facts set out. * * * Therefore, if it be admitted, but which is not the fact, that the general averment that the things therein referred to as being within the scope of the agent's employment related to the things to be done in furtherance of the conspiracy, then the facts as specially set up would negative such an averment, under the common law, as it is well settled by the decisions of this and most of the courts of the country that an agent of a public carrier has no authority to issue a bill of lading for goods before the same are delivered for shipment, and that the carrier is not responsible for such unau-

thorized acts of its agent.  *  *  *  If the agents of the defendant would not have been acting within the line or scope of their employment had they themselves issued such a document, they would not, of course, have been acting within the line or scope of such employment in attempting to authorize, or in aiding others to do so.  Clearly, under the common law, the agents of the defendant could not issue spurious bills of lading so as to bind the principal."—188 Ala. 118, 119, 65 South. 1003, 1005.

The leading cases in which corporations were held as conspirators are:  *Franklin Union No. 4 v. People,* 220 Ill. 355, 77 N. E. 176, 4 L. R. A. (N. S.) 1001, 110 Am. St. Rep. 248; *Aberthaw Const. Co. v. Cameron,* 194 Mass. 208, 80 N. E. 478, 120 Am. St. Rep. 542; *West Va. Transp. Co. v. Standard Oil Co.,* 50 W. Va. 611, 614, 40 S. E. 591, 56 L. R. A. 804, 88 Am. St. Rep. 895; *Zinc Carbonate Co. v. First Nat. Bk. of Shullsburg,* 103 Wis. 125, 79 N. W. 229, 74 Am. St. Rep. 845; *Buffalo Lubricating Co. v. Standard Oil Co.,* 106 N. Y. 669, 12 N. E. 826; *Hobbs v. Boatright, et al.,* 195 Mo. 693, 724, 93 S. W. 934, 5 L. R. A. (N. S.) 906, 113 Am. St. Rep. 709; *Stewart v. Wright,* 147 Fed. 321, 325, 326, 77 C. C. A. 499; Id., 203 U. S. 590, 27 Sup. Ct. 777, 51 L. Ed. 330; *Hindman v. First National Bank,* 98 Fed. 562, 39 C. C. A. 1, 48 L. R. A. 210; Id., 112 Fed. 931, 939, 50 C. C. A. 623, 57 L. R. A. 108; *Johnston Fife Hat Co. v. First National Bank,* 4 Okl. 17, 44 Pac. 192, 194; *Rogers, et al. v. V. S. & P. R. Co.,* 194 Fed. 65, 114 C. C. A. 85; *State v. Salisbury Ice & Fuel Co.,* 166 N. C. 366, 81 S. E. 737, 52 L. R. A. (N. S.) 216, Ann. Cas. 1916C, 456; *Dodge v. Bradstreet Co.,* 59 How. Prac. (N. Y.) 104.  A careful examination of these cases will show that where these several corporations were held liable for conspiracy, the conspiring agent, acting for the corporation, was its corporate officer, or an agent acting within the line and scope of his authority, and who did for the corporation an act that was essential and necessary to the unlawful transaction or damnifying result.

In the *Franklin Union Case* was alleged the conspiracy of officers and members of the Union to inaugurate strikes and by a course of violence, threats, intimidation, and force to prevent other persons in the employment of the members of said association from continuing in their employment, the effect of which systematic course of threats and violence was to injure and destroy the business of the members of the association.  The holding of the court was that entering into the conspiracy each con-

spirator became liable for all the acts of his conspirators done in furtherance of the object of the conspiracy.

In the *Aberthaw Const. Co. Case,* injunctive relief was sought against the officers and members of a labor union who were alleged to have formed a conspiracy to compel the plaintiff, under penalty of a general strike, to hire only union workmen in the prosecution of its contract work. It was held that the fact that one of the conspirators was a corporation gave it no immunity from the consequences of such an unlawful combination.

In *West Va. Transp. Co. v. Standard Oil Co., supra,* the declaration charged that the plaintiff was engaged in the business of transporting petroleum by means of pipe lines and tank cars, had expended large sums to that end, and that the defendants maliciously and wickedly conspired to injure the plaintiff and ruin its business, and to prevent all persons from transporting oils through plaintiff's pipe lines and by means of its tank cars. The holding was that a corporation can be guilty with other corporations or persons of a conspiracy that resulted in injury to other corporations or persons.—50 W. Va. pp. 614, 615, 40 S. E. 591, 56 L. R. A. 804, 88 Am. St. Rep. 895.

The Shullsburg Bank, with others, was charged with conspiracy with the Zinc Carbonate Company, to receive benefits from the sale of certain property. The bank's secretary and its cashier were alleged to have actively participated to the accomplishment of the fraud. The doctrine was announced that ultra vires was not, in such cases, to be placed in the hands of the corporation itself, or of private individuals, as a means to be used by it or them, for obtaining or retaining something of value which belongs to another.

In the *Hobbs* and *Stewart Cases,* the evidence tended to show that the officers of the bank knew the business that Boatright and his associates were engaged in, knew their method of enticing strangers into their net and fleecing them, and with this knowledge lent to Boatright and associates the appearance of respectability that such a banking institution would afford, and allowed the bank to be used by the conspirators to effect the transfer of the money thus fleeced from the victim. The opinion on this point was: "The bank was a necessary link in the scheme to defraud. Its name, character, and influence were constantly employed to give Boatright a false standing with his victims. * * * While it did not decoy the various victims to Webb

City, nevertheless after their arrival it assisted in despoiling them. The cashier of the bank had charge of one important station in the scheme. * * * With full knowledge of the methods of the conspirators and their designs, born of past experience and participation, *the managing and controlling authority of the bank assisted in the accomplishment* [italics ours]."—147 Fed. 325, 326, 77 C. C. A. 499, 503.

In *Hindman's Case,* the bank had made a statement concerning the financial condition of its customer in furtherance of the interest of the bank; the petition charged that the bank not only made the false statement to the insurance commissioner of such financial condition, but also conspired through its cashier to repeat the statement to the public in furtherance of the fraudulent scheme or conspiracy. Circuit Judge Taft declared that it was settled law that a corporation may be held for torts in which express malice or intent to defraud is a necessary element, and that a corporation may be held for a conspiracy with others resulting in injury to a third person for acts performed in the course and within the scope of the agent's employment in the business of the principal.—98 Fed. 562, 39 C. C. A. 1, 48 L. R. A. 210.

In the second *Hindman Case,* 112 Fed. 931, 939, 50 C. C. A. 623, 631 (57 L. R. A. 108), Mr. Justice LURTON, distinguishing between actions on contract and actions in tort, said: "How can it be said that, without the authority of the board of directors, the cashier's action in giving such a certificate would not be the act of the bank? This is not an action to enforce a contract made by a cashier. * * * If the cashier's act is the act of the bank, the liability of the latter for the tort may be plain, although it might not be liable for a promise by the cashier made under the same circumstances.—Morse Bank, § 171; Thompson's Corp. §§ 4778, 6283."

In *Johnston Fife Hat Co. v. National Bank, supra,* the conspiracy alleged was between the hat company and the National Bank of Guthrie, by which the former was to purchase on credit of wholesale dealers, and when the goods so purchased were in store, the bank would, and did, take a spurious mortgage on the same, foreclose it on the fruits of the fraud, and divide the proceeds between the conspirators. The court declared (4 Okl. 25, 44 Pac. 194) that in order to render the bank liable in tort it was not necessary "that it should have authority to take each par-

[National Park Bank v. L. & N. R. R. Co.]

ticular step required to consummate the fraud. It is sufficient to charge the bank that it took part in the conspiracy, knowing its purpose. This it did by taking the mortgage, by seizing and selling the goods, by appropriating the proceeds, and thus aiding in the fraudulent design and purpose."

In *Roger's Case*, the suit was by a widow and minor child of one who was taken from the parish jail and hanged. The common carrier was held liable for furnishing a special train to the brother of the murdered man, which train of cars was run by defendant from Monroe to the parish jail, and on which gathered, along the way, the individuals who formed the mob that broke the jail and hanged Rogers. The court said: 'The railroad company was present throughout by its authorized agent, and * * * they knew, or ought to have known, long before the special train reached Tallulah, that the object and purposes of the trip were unlawful."

In *Salisburg Ice & Fuel Co. Case, supra,* it was declared that where an agent of a corporation, within the scope of the agency and of the employer's business, obtains anything of value for the corporation by false pretenses or fraud, the corporation may be made to respond for this fraud exercised for it by such authorized agent.

In *Dodge v. Bradstreet Co., supra,* it was averred in the complaint that the corporation defendant confederated with the others to injure the plaintiff *by circulating false and slanderous statements,* with the view of compelling plaintiff to become a subscriber to the corporation's publication, and that in pursuance of such combination the slanderous words were uttered by the other defendant, and the corporation.

It follows, therefore, that the rule by which liability, is fixed on a corporation for participation in a conspiracy resulting in injury is not different, in principle, from that imposing liability on the corporation for any other willful or unlawful act that resulted in injury to a third person. In *Supreme Lodge of the World, Loyal Order of Moose, v. Kenny, as Adm'r,* 198 Ala. 332, 73 South. 519, this court recently said:

'The following quotation taken from the case of *Hardeman v. Williams,* 169 Ala. 50 [53 South. 794], found in the recent case of *Republic Iron & Steel Co. v. Self* [192 Ala. 403]; 68 South. 328 [L. R. A. 1915F, 516], succinctly states the rule as recognized in this case: 'The principal is responsible for the acts of

his agent done within the scope of his employment, and in the accomplishment of objects within the line of his duties, though the agent seek to accomplish the master's business by improper or unlawful means, or in a way not authorized by the master, unknown to him, or even contrary to his express direction.' "

The test of the corporation's liability in conspiracy cases is whether there was authority for doing the act in question by its officer or agent, and, if so, whether the agent acted for the master. Did the corporation conspire? The corporation can only be held liable for its act done by an agent, servant, or officer, in the particular business in which the corporation and its agent are engaged. If the rule were otherwise, the serious interest of corporations would be jeopardized and often destroyed by the conduct and conspirings of those of their agents or servants engaged in the conduct of the master's business, who know nothing and care nothing about the policy or the real interests of the corporation, and of whose conduct and conspirings the officer or manager or agent who directs and dictates the policy and the more serious business affairs of the corporation never knew.—*Standard Oil Co. v. State,* 117 Tenn. 618, 100 S. W. 705, 10 L. R. A. (N. S.) 1015. On reason and authority, therefore, where corporations are held for conspiracy, it must be averred and proven that the conspiracy was entered into by its agent or officer, and that by implied or express authority, such agent or officer was acting within the line and scope of his employment in the accomplishment of the business of the master; and that such agent or officer, as such, did an essential or necessary act which the conspiracy contemplated.

On the former appeal this court pointed out that the complaint, as then framed, failed to charge that the act done or to be done was within the scope of the employment of the defendant's agent, that the facts set out in the complaint showed that there was no power in the agent to do the acts alleged to have been agreed on and to be done by him, and that for such reason it failed to charge liability against the defendant.—188 Ala. 118, 65 South. 1003.

(9) On the second trial said defects were sought to be met by alleging other transactions with and by third parties not in the defendant's employment, and with whom appellee did not participate or have any connection, where all of the acts conspired to be done, whether by Knight, Yancey & Co., or by the defend-

ant, through its agents, were done, and that in the transaction
out of which the cause of action arose, the forgery of bills of
lading for the 1,950 bales of cotton and the sale of drafts with
such spurious bills of lading attached, the acts alleged to have
been conspired to be done by Knight, Yancey & Co. were done
by *them, but it is not alleged that the acts conspired to be done
by the defendant were done.* That is to say, the effect of the
facts averred was, that a conspiracy was entered into by and
between the defendant and Knight, Yancey & Co. in 1905, by
which Knight, Yancey & Co. were to do certain things,
among which was, "thereafter" to issue bills of lading
in defendant's name without delivery to the defendant of
property for transportation, and that the defendant's agent was
to do certain things, and that (the act of conspiring and) the
things to be done (and such as were done) by defendant's agent
were within the scope of his employment. However, no facts are
alleged showing that the transaction in which the loss was sus-
tained were within the scope of the employment of the defend-
ant's agent charged with having bound it by the said conspiracy.
—3 Cooley's Briefs, p. 2488; *De Jarnett's Case,* 111 Ala. 261, 19
South. 995; *Waldman Case,* 91 Ala. 170, 8 South. 666, 24 Am.
St. Rep. 883.

The conspiracy sought to be alleged in the several counts
may be generally stated as being between third parties—parties
not in defendant's employ—and defendant's agent, by which
it was agreed or conspired that such third parties, among other
things, might at any time thereafter (1905), as they should
desire or see fit, and without the delivery of property to the
defendant for transportation, issue bills of lading for any amount
of cotton, purported to be delivered by said third parties for
shipment over defendant's line for transportation to European
ports, and that defendant's agents would aid and assist in caus-
ing deliveries to be made at such European ports of any cotton
when shipment was actually made by such third parties subse-
quent to the issue by them of such spurious bills of lading.

The averment of the acts to be done by such agent in causing
deliveries to be made of such cotton as said third parties might
ship under any spurious bills of lading issued by them in de-
fendant's name was as follows: "Defendant, acting by and
through the said John A. Bywater, or said other agents of it,
whose names to the plaintiff are unknown, and who were the

same agents who entered into the said conspiracy with the said Knight, Yancey & Co., would, through the influence of its business relation with its connecting carrier, aid and assist in causing delivery to be made by such connecting carrier to the holders of such false and spurious bills of lading of any cotton which the said Knight, Yancey & Co. might, subsequently to the issue of such false and spurious bills of lading, ship over defendant's railroad and its connections, etc.;    *   *    and plaintiff avers that it was within the scope of the employment of the said John A. Bywater or of said other agent of defendant to so aid and assist in causing in such manner such *deliveries to be made.*"

Consequently no facts are alleged showing acts by defendant's agents (who are charged with having conspired with Knight, Yancey & Co.), or that such agents were employed by the defendant to do the acts alleged to have been done by them pursuant to the conspiracy, so as to enable the court to determine whether the conspiracy charged was within the scope of the employment of such agents by the defendant. The allegation that the thing to be done by said agents—"to so aid and assist in causing in such manner such deliveries to be made"—was within the scope of the employment by the defendant, is a conclusion of the pleader, and is insufficient, in not showing that the act of conspiring, and the things to be done by the defendant through its said agents, were within the scope of the defendant's employment of its said agents, and of the prosecution of defendant's business.—*B. R., L. & P. Co. v. Nicholas,* 181 Ala. 491, 61 South. 361; *Woodward Iron Co. v. Marbut,* 183 Ala. 310, 62 South. 804; *Langhorne v. Simington,* 188 Ala. 337, 66 South. 85; *L. & N. R. R. Co. v. Jones,* 130 Ala. 470, 30 South. 486; *Republic Iron & Steel Co. v. Self, supra.*

(10) In discussing the statute (section 6136, Code) in *L. & N. R. R. Co. v. National Park Bank, supra,* by the use of the expression "under the law as changed by our statute, in order to fasten liability upon the carrier for the issuance of a false bill of lading, it must have been issued, *or authorized,* by an agent charged with the duty of issuing such documents," it was not intended to say that an agent who was authorized to issue bills of lading upon the receipt of the property for transportation could bind his principal by authorizing a third person, not in the employment of the master, to generally issue bills of lading without the receipt of such property. A consideration of the whole

opinion, makes this clear. For the effect of the former decision in the instant case was that under the facts then alleged in count 5, if Bywater, acting within the scope of his employment by defendant, agreed with Knight, Yancey & Co. that the latter might issue bills of lading without the delivery of the goods for shipment, he could not, as a matter of law, have been acting within the scope of his employment and in the discharge of the business of his principal. We do not think that the averment, in the alternative, that Bywater who had the conducting and super-intendence of the defendant's shipments of cotton and who was charged with the authority among other things, "of issuing or of causing to be issued by his subordinates and under his directions bills of lading" meets with the requirements as laid down in the former opinion in dealing with the statute. The complaint must be judged by its weakest alternative averment, and the averment of the fact that Bywater had a general authority to cause agents to issue bills of lading in the course of shipments falls short of averring that Bywater was an agent clothed with the duty of issuing bills of lading. He may have had a general supervision and control of the subordinate agents with power to control and instruct them and still not have had the authority from the defendant to issue bills of lading. The holding upon the former appeal does not sanction a liability, under the statute, for the spurious issuance of a bill of lading, except when actually issued by one clothed with authority to issue bills of lading or when done by some one under his direction or authority, so as to make it his own act. In other words, the agent who issues the bill of lading or who directs or authorizes the issuance must have had the authority to issue bills of lading and it does not suffice to charge that one who merely can direct or supervise agents charged with the issuance of bills of lading, but with no author-ity to issue the same himself, can bind the defendant by the issu-ance of spurious bills of lading or by directing some one not clothed with the authority to issue proper bills of lading to issue spurious ones.

In *Alabama Great Southern Railroad Company v. Com. Cot. Co.*, 146 Ala. 388, 399, 42 South. 406, 407, it is quoted from *Jasper Transportation Co. v. K. C., M. & B. R. Co.*, 99 Ala. 416, 422, 423, 14 South. 546, 42 Am. St. Rep. 75, that: "The statute must not be construed as altering the common law, or as making any innovation therein further than the words import."

It is without question that at common law no one had authority to issue bills of lading without the receipt of the property for transportation.—*Friedlander v. Texas, etc., Co.*, 130 U. S. 416, 9 Sup. Ct. 570, 32 L. Ed. 991; Hutchinson on Carriers (3d Ed.) § 160; *Pollard v. Vinton*, 105 U. S. 7, 26 L. Ed. 998. The leading case on this point (*The Schooner Freeman v. Buckinham*, 18 How. 182, 15 L. Ed. 341) has many times been affirmed by American courts (5 Rose's Notes, U. S. Rep. 559 et seq.) And this authority is in accord with the rule declared by the English courts.—*Grant v. Norway*, 10 Eng. Com. Law (C. B.) 665; *Cox v. Bruce*, L. R. 18, Q. B. 147; *Lickbarrow v. Mason*, 2 Term. Rep. 77.

The *Grant Case, supra*, was practically the case at bar. There the holding was that the master of a ship signing a bill of lading for goods which had never been delivered to him for shipment was not to be considered as the agent of the owner in that behalf, so as to make the owner responsible to one who had made advances to the holder of such bill of lading upon the faith of the bill of lading so signed by the master of the ship.

(11) The Alabama statute in question cannot be given the effect, to have authorized an agent of the defendant having the power to issue bills of lading for property received, to deputize or empower third persons, not in the employment of the agent's corporate master nor in the prosecution of its business, to issue at will bills of lading without the receipt of the property to be shipped and subject the master to liability thereby. The effect of the statute was to subject to liability at the suit of the party injured any common carrier not having received things or property for carriage, who gives or issues a bill of lading or receipt for property as if actually received; or any warehouseman, or wharfinger, or person engaged in the business of storage, or keeping for shipment, or forwarding, who issues a receipt for things or property, not having received them; or such parties who give or issue a second bill of lading or receipt, the original being outstanding, without expressing on the face of such second receipt that it is a duplicate or any such parties who shall surrender such thing or property without receiving or canceling the bill of lading or receipt issued therefor, or who make partial delivery without indorsing such partial delivery on such bill of lading or receipt, except as provided in section 6135. The ex-

·tent of the liability is fixed by the statute at "all damages, imme-
·diate or consequential, therefrom resulting."

The delegability of the authority of such an agent in impor-
·tant matters of the principal's business could not by implication
be extended to the general power of affixing the agent's name to
any bill of lading that the third party may see fit to issue without
·the delivery of the property to the principal so to be transported.
The liability of the principal for such fraudulent bills of lading
(those without the receipt of the property), in the absence of
·knowledge and participation by the principal or its authorized
agent, not being declared by our statutes, must be limited by the
rule long prevailing at the common law.

As ·to the transactions alleged to have been had with other
third persons, as the discounting of drafts with such bills of
lading attached, with which the plaintiff is not alleged to have
been connected, no recovery could be had by·plaintiff, because:
(1) Plaintiff was not damaged thereby; (2) defendant was only
liable for the act of its authorized agent done within the scope of
his employment, and not for acts done by another (a third party)
to which defendant's agent, as a matter of law, had no authority
to agree or consent for the defendant.

(12) In the absence of a special contract, or of a relation of
partnership or agency, between the initial and the connecting
carrier, such connecting carrier is liable only for loss or damages
occurring on its own line.—*Southern Express Co. v. Saks,* 160
Ala. 621, 49 South. 392; *Central of Georgia Railway Co. v. Chi-
cago Varnish Co.,* 169 Ala. 287, 53 South. 832.

(13). The averments in the counts, of what the defendant's
agent was to do, ,through the influence of defendant's business
relation with its connecting carriers, to aid and assist in causing
deliveries to be made by such connecting carriers on such fraudu-
lent bills of lading as Knight, Yancey & Co. might at any time
issue, could not be said to set up acts within the scope of the
employment of the defendant's agent, for such alleged contem-
·· plated deliveries were not within the scope of the defendant's
business. This is true by reason of the fact that, in the absence
of contractual agreement otherwise, when the defendant safely
transported the cotton to the end of its line and delivered the
same to its connecting carrier, to be transported beyond the state
of Alabama to a foreign country, the defendant's responsibility

for, connection with, and authority over, such shipments were terminated.

(14) Moreover, from the averments of these several counts, the thing purported to have been agreed to be performed by defendant's agent, Bywater, to aid and assist in causing deliveries at foreign points on such fraudulent bills of lading, was never done by said Bywater or any other of defendant's agents, in the transaction in which the alleged injury was sustained and the alleged cause of action arose. If such shipments had been made on the spurious bills of lading, recovery of the actual cotton so shipped could have been had under the authority of *Lovell v. Isidore*, 192 Fed. 753, 113 C. C. A. 39, and, as remarked by Judge ANDERSON, this suit would not have been brought.

Each fraudulent bill of lading so issued, as the result of a conspiracy entered into between Knight, Yancey & Co., the defendant, and others, was a separate and distinct criminal offense or cause of civil action.

The averment of fact that "said Knight, Yancey & Co., between April 7, 1910, and April 30, 1910, made up and issued false and spurious documents purporting to be defendant's bills of lading, calling for the carriage by defendant and connecting carriers of, to-wit, 1,950 bales of cotton from points in Alabama to Liverpool, England," in connection with the other averments of fact, falls short of the allegation that, as the result of the alleged conspiracy with Knight, Yancey & Co., the defendant or any of its authorized agents did any act within the line and scope of such agency and the master's business, in the issuing and uttering of the false and spurious bills of lading between the dates of April 7, and April 30, 1910, covering the 1,950 bales of cotton, to which there were attached the drafts, amounting to $150,000, discounted with plaintiff, in which transaction plaintiff is alleged to have sustained its injuries.

The fact that the defendant and Knight, Yancey & Co. conspired to the end of the issuance of other spurious and fraudulent bills of lading, upon which defendant, through its business associates, assisted in procuring delivery at point of destination, on which damage or loss was, or was not, sustained by other parties than plaintiffs, did not fix liability on defendant for a separate and subsequent issue of spurious or fraudulent bills of lading, on which shipments were not made, and about which neither the defendant nor its agent did any essential or necessary act.

If conspirators, other than authorized agents of the corpora-
tion, were at liberty to proceed with the commission of such
fraudulent acts, and bind the defendant corporation by such sub-
sequent acts of coconspirators in which the corporation's author-
ized agents did not participate, and at the doing of which they
were not even present, encouraging, aiding, and abetting, the
right of locus pœnitentiæ would be denied; and the serious inter-
ests of the corporation jeopardized or destroyed by agents or
servants having nothing to do with the real interest of the cor-
poration, of whose acts the officers or agents of the corporation
directing its more serious business affairs have no intimation or
knowledge.

It is not even averred that the defendant or its authorized
agents actually knew of the issuance of the bills of lading cover-
ing the 1,950 bales of cotton in question, and on which the loan
of $150,000 was made and loss sustained. The general averment
that, as a part of and in accordance with the terms of said con-
spiracy, under which 20,000 spurious bills of lading had been
formerly issued and uttered and under which defendant had
procured delivery of the cotton, was not the equivalent of an
averment that Knight, Yancey & Co. were authorized by the
defendant or its authorized agents to issue and utter the spurious
bills of lading covering the 1,950 bales of cotton in question,
and that the defendant knew that the same were to be issued
or were issued by Knight, Yancey & Co.

In *State, ex rel. Attorney General v. Tally, supra,* the effect
of the holding was, that to aid and abet in the commission of a
crime the result of a conspiracy, it is necessary that assistance
would actually be rendered in its commission by acts or words
of encouragement or support, or, when no actual assistance is
given, the confederates must be present, actually or construc-
tively, by prearrangement, special or general, at least to the
knowledge of the principal, with the intent to render assistance
should it become necessary. If a criminal prosecution were
pending against the defendant for conspiracy in the matter of
the issuance of said spurious bills of lading for the 1,950 bales
of cotton, it would not be contended that this defendant or its
agent had given assistance by word or act in the consummation
of the fraud, or that, not having given assistance, the corpora-
tion's authorized agent was present by prearrangement, with the
knowledge of the principal, with the intent to render assistance

should it become necessary.  To hold that the agent of defendant was present, actually or constructively, by prearrangement and knowledge of the principal, and assisted in the issue of the bills of lading in question by Knight, Yancey & Co., from the fact that such defendant's absent agent had aided and assisted for defendant in the delivery of the cotton to European purchasers on past fraudulent bills of lading, would deny the right of locus pœnitentiæ to the defendant and its agents.  The result of such a decision would be far-reaching, and greatly outweight any apparent loss or hardship that might result to the holders of the spurious bills of lading acquired in the course of business of buying foreign bills of lading.

(15) It has long been a declared rule of criminal pleading that conspiracy must be sufficiently charged; that the charge cannot be aided by averments of acts done by one or more of the conspirators in furtherance of the plot.—*United States v. Britton,* 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698; *Reg. v. King,* 7 Q. B. 782; *Commonwealth v. Shedd,* 7 Cush. (Mass.) 514.  It must also be the rule in civil suits that the conspiracy must be sufficiently charged.  In contravention of the rule is the attempt of the plaintiff in this case to fix liability on the defendant by the averment, alone, of acts alleged to have been done by one or more of the conspirators in furtherance of the general objects of the alleged conspiracy to issue spurious bills of lading; and no act is alleged by which the defendant is shown to have conspired, or in pursuance of which it is shown to have aided in the issuance or uttering of such spurious bills of lading, to plaintiff's injury.

(16)  Count B is the same as count 5, except that it is therein alleged that the course of conduct between defendant and Knight, Yancey & Co. "became a system or general course of conduct or business, and that it could not have become such course of conduct or business but for the participation therein, as averred, of this defendant," and that, as a consequence thereof, "the public engaged in the cotton trade, including the plaintiff, were induced to believe and did believe that said Knight, Yancey & Co. were legitimately engaged in the sale of cotton on a large scale, and that the said spurious documents purporting to be defendant's bills of lading, issued and uttered as aforesaid by Knight, Yancey & Co., were the genuine bills of lading of the defendant, evidencing cotton received by it for shipment;" the plaintiff averring

that, as a proximate result thereof, plaintiff was induced to discount said draft and suffered the loss and damage set forth.

The effect of this additional allegation is to charge that Bywater, by this method of dealing with other bills of lading, previously issued by Knight, Yancey & Co., induced the plaintiff to believe that the bills of lading so issued by that company were genuine bills of lading of the defendant's, and so to deal with them and to purchase the bill of lading in question on which the plaintiff sustained the loss complained of.

The expression of the court, on former appeal, was to the effect that: "If the agents of the defendant would not have been acting within the line or scope of their employment had they themselves issued such a document, they would not, of course, have been acting with the line or scope of such employment, in attempting to authorize, *or in aiding others to do so.*"

The effect of the addition of count B was to claim the right to recover, although Bywater could not have issued the bills of lading in question nor have authorized their issuance, on the theory, either that, by consenting to the issue of similar bills of lading on previous occasions he bound the defendant in this instance, or that, though he may not have authorized the issuance of such bills of lading, yet by representing to others that the former bills of lading were authorized, he subjected the defendant to liability in the present suit by the plaintiff. Thus it is sought by indirection to impress a liability that would not exist if Bywater issued the bills of lading, or authorized their issuance, without receipt of the property purported to have been received for shipment. This contention was heretofore disposed of.—*L. & N. R. R. Co. v. Nat. Park Bank, supra,* 188 Ala. 119, 65 South. 1003.

Count C contains the same allegations as count B, with the addition that: Said firm of Knight, Yancey & Co. was insolvent, and that the issuance and utterance by them of said spurious documents, in manner and form as aforesaid, *would have been discovered long prior to the loss and damage to the plaintiff,* which is herein set forth, but for the execution of said conspiracy and the participation of the defendant therein as herein set forth, and as a proximate result of such participation by this defendant, said course of business was continued until, to-wit, April 30, 1910, and this plaintiff's damages and loss as herein averred was thereby proximately caused."

(17, 18) If count B did not state a cause of action, the additional averment that Knight, Yancey & Co. could not have continued business because of insolvency, etc., did not make the act of Bywater (that would not otherwise have been within the scope of his employment) bind the defendant, nor give plaintiff a cause of action for misrepresentations which were not made to it and upon which it did not act to its detriment. The averments in the count going to show that the proximate cause of plaintiff's damage was Knight, Yancey & Co.'s continuance in business, and their fraudulent conduct theerof, were conclusions of the pleader. The proximate cause of the injury is shown to have been the obtaining of money from plaintiff upon certain drafts with fraudulent bills of lading issued by Knight, Yancey & Co. attached in the case on which the loss was sustained; and not the previous issuance and disposition of fraudulent bills of lading to others dealing in such securities.—*B. R., L. & P. Co. v. Friedman,* 187 Ala. 562, 65 South. 939; *B. R., L. & P. Co. v. Weathers,* 164 Ala. 23, 51 South. 303; *B. R., L. & P. Co. v. Jordan,* 170 Ala. 535, 54 South. 280; *Selma S. & S. Ry. Co. v. Campbell,* 158 Ala. 445, 48 South. 378; *Merrill v. Sheffield,* 169 Ala. 251, 53 South. 219.

Count D is different from count C, in that it alleges that Bywater was charged with the duties of supervising and conducting the defendant's shipment of cotton to foreign ports, of issuing or causing to be issued by his subordinates and under his direction, bills of lading for such shipments, of procuring deliveries of cotton under bills of lading issued or purporting to be issued by defendant, of adjusting complaints, inquiries, and difficulties arising between the consignee of such cotton or the holders of bills of lading issued, or purporting to be issued, by the defendant or carriers connecting with the defendant, over whose lines such cotton had been shipped; and also alleges that some of the prior transactions in which Bywater caused deliveries were with plaintiff.

(19) If the complaint be construed most strongly against the pleader, where the allegation is that one of two things is true, unless each alternative allegation is sufficient to make out a case the count must be held insufficient.—*Southern Railway Co. v. Bunt,* 131 Ala. 591, 594, 32 South. 507; *B. R., L. & P. Co. v. Nicholas,* 181 Ala. 491, 502, 61 South. 361; *Central of Georgia Railway Co. v. Freeman,* 134 Ala. 354, 32 South. 778; *Sloss-*

*Sheffield Co. v. Sharp,* 156 Ala. 284, 288, 47 South. 279; 4 Ency. Pl. & Pr. 620. The count must be tested by its weakest alternative averment (*Jordan v. Ala. C. G. & A. Ry. Co.,* 179 Ala. 291, 60 South. 309; *Osborne v. Ala. S. & W. Co.,* 135 Ala. 571, 33 South. 687), and must be proved as alleged (*Central of Georgia Railway Co. v. Isbell,* 198 Ala. 469, 73 South. 648). Similarly, it has been held that a charge is to be tested by its weakest clause.—*Reynolds v. Woodward Iron Co., infra,* 74 South. 360.

(20) In testing the sufficiency of this count, it will be treated as though it alleged that Bywater's duties were: (1) To supervise and conduct the defendant's foreign shipments of cotton through the port at Pensacola, Fla.; and (2) to issue or cause to be issued by his subordinates and under his direction bills of lading for such shipments; and (3) to procure deliveries of cotton under bills of lading issued by the defendant, or purporting to be issued by it; and (4) to adjust complaints, inquiries, and difficulties arising between the consignees of any such cotton or the holders of bills of lading purporting to be issued by carriers connecting with the defendant, over whose lines such cotton has been shipped. Thus is presented no question of surplusage, but of sufficient averment of the acts done and agreed to be done by the corporation's agent, within the line and scope of his employment, in a conspiracy case.

(21, 22) If it had been within the authority of the agent to conduct and supervise shipments of cotton to foreign ports over defendant's lines, as a matter of law, this would not have brought the delivery of cotton by connecting carriers within the scope of the agent's employment; nor, as a matter of law, does the power to cause bills of lading to be issued, make the issuance of bills of lading by third parties without the receipt of the property, within the scope of the agent's employment. Moreover, as to deliveries by connecting carriers of cotton upon bills of lading purporting to have been issued by the defendant, but not so issued, the fact that such property was so shipped and delivered under other like bills of lading issued by the defendant did not bring the alleged unlawful transaction in which the plaintiff's injury occurred within the scope of the defendant's business. It is further apparent that it was no part of defendant's business, and beyond the scope thereof, to adjust controversies arising between consignees of property, shipped over another carrier,

and the holders of bills of lading purporting to be those of such other carrier.

(23) Count E alleges the same conspiracy, and attempts to aver how defendant's influence with connecting carriers exercised to procure the delivery of cotton upon false bills of lading amounted to a fraud on plaintiff. The averment is: "By willfully deceiving, or willfully causing to be deceived, or making false representations, or causing false representations to be made, or fraudulently suppressing or fraudulently causing to be suppressed the truth from the holders of such false and spurious bills of lading when their complaints or inquiries in reference to the cotton therein purported to have been shipped were referred to him as agent of the defendant and in the line and scope of his duties as such agent," etc.

It was thus sought to allege a course of business, established by Knight, Yancey & Co., and the defendant, by which the former were enabled to sell a large number of their drafts with bills of lading attached. To base an action for fraudulent concealment, a duty to disclose the truth must be shown, that the disclosure was not made when opportunity to speak and inform was presented, and that the party to whom the duty of disclosure was due was induced thereby to act to his injury.—1 Story, Eq. Jur. § 207, p. 216; 2 Pom. Eq. Jur. § 900; *Griel v. Lomax*, 89 Ala. 420, 427, 6 South. 741; *Hall & Bro. v. Western Assurance Co.*, 133 Ala. 637, 32 South. 257; *Bradfield v. Elyton Land Co.*, 93 Ala. 527, 8 South. 383; *Saltonstall v. Gordon*, 33 Ala. 149; *Van Arsdale v. Howard*, 5 Ala. 598, 602; *Greil Bros. Co. v. McLain*, 197 Ala. 136, 72 South. 410; *Corry v. Sylvia y Cia*, 192 Ala. 550, 68 South. 891. In *Flewellen, et al. v. Crane*, 58 Ala. 627, it is said that fraud is a conclusion of law from facts stated and proved. When it is pleaded at law or in equity, the facts out of which it is supposed to arise must be stated; a mere general averment without such facts is not sufficient.—*Skinner v. Southern Gro. Co.*, 174 Ala. 359, 367, 56 South. 916; *Empire Realty Co. v. Harton*, 176 Ala. 99, 57 South. 763; *Phoenix Ins. Co. v. Moog*, 78 Ala. 301, 56 Am. Rep. 31; *Penny v. Jackson*, 85 Ala. 72, 4. South. 720.

(24) In this count neither the duty nor the concealment is sufficiently alleged. The count does not show, except by conclusion, what the "complaints or inquiries with reference to other cotton purported to have been shipped" were, nor were any facts

averred showing that the alleged suppression was fraudulent or of a character reasonably calculated to deceive the plaintiff to its injury in the transaction made the basis of this suit. If the alleged misrepresentation was in response to complaints or inquiries concerning cotton that had proceeded beyond defendant's control and into the possession and control of connecting carriers, or if it did not relate to the bill of lading that Knight, Yancey & Co. issued without delivering any property to the defendant for transportation and from which the injury resulted, but in some other transaction than that on which the suit is based, it could not, as a matter of law, be said to relate to a matter within the scope of the defendant's business, nor that its utterance was so within the scope of the employment of any of its agents as to bind defendant.

The additional averment injected in count G, to the effect that Knight, Yancey & Co. committed a series of acts in which defendant's agents participated, "that would have been discovered long prior to the loss and damage of the plaintiff," and that their business would have been broken up before the occurrence of the transaction in which plaintiff sustained its loss, etc., is patently bad.

It follows that defendant's demurrers to amended counts 5, A, B, C, D, E, F, and G, were properly sustained.

(25) Counts H, I, J, and K sought to aver a course of fraudulent conduct, on the part of defendant, that resulted in injury to the plaintiff in the manner and form alleged, and made the bill of lading as an exhibit a part of said counts. The bill of lading purported to be attached as Exhibit A, and so made a part of said counts, does not appear in the record. We must presume in favor of the correctness of the ruling of the trial court. In the absence of the bill of lading made an exhibit, we cannot do otherwise than affirm the ruling of the court in sustaining the demurrers to said counts.—*Winter v. City Council,* 79 Ala. 481; *Wood v. Wood,* 119 Ala. 183, 24 South. 841.

It results from the foregoing that the judgment of the Morgan county law and equity court, sustaining defendant's demurrers to each count of the complaint, to-wit, amended count 5, and counts A to K, inclusive, be and it is hereby affirmed.

Affirmed.

ANDERSON, C, J., and MAYFIELD and SOMERVILLE, JJ., concur.